### BARRY v. THE PLAYERS.

(Supreme Court, Appellate Division, First Department. December 1, 1911.)

1. CLUBS (§ 5*)—EXPULSION OF MEMBERS—GROUNDS—"CAUSE."

A cause sufficient to justify expulsion of a member of a corporation. formed for social purposes and conferring on its directors power to expel members for cause, is conduct which in some way or to some degree tends to injure the corporation materially, or in reputation, or is contrary to and destructive of the purpose of its organization, and a member may not be expelled arbitrarily and on insufficient grounds.

[Ed. Note.—For other cases, see Clubs, Cent. Dig. § 4; Dec. Dig. § 5.*

For other definitions, see Words and Phrases, vol. 2, pp. 1009–1012; vol. 8, pp. 7597–7598.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CLUBS (§ 5*)—EXPULSION OF MEMBERS—GROUNDS—"CAUSE."

A member of a corporation, formed by members of the dramatic profession and the kindred professions of literature, painting, sculpture, and music, for social purposes, who publishes in a magazine an article reflecting on the dramatic profession, is not guilty of misconduct justifying his expulsion under a provision authorizing the expulsion of members for cause, though his conduct might have prevented his election to membership, and on his expulsion the court will compel his reinstatement.

[Ed. Note.—For other cases, see Clubs, Cent. Dig. § 4; Dec. Dig. § 5.*]

Ingraham, P. J., dissenting.

Appeal from Special Term, New York County.

Application for mandamus by Richard Barry against The Players to reinstate him as a member of respondent, a social club. From an order of a Special Term (73 Misc. Rep. 10, 130 N. Y. Supp. 701) denying a motion for a peremptory or alternative writ, petitioner appeals. Reversed, and peremptory writ granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Henry W. Bridges, for appellant.
Joseph F. Daly, for respondent.

SCOTT, J. Appeal from an order denying relator's application for a writ of mandamus to reinstate him as a member of the respondent, a social club.

The respondent was incorporated in 1888; its purpose and objects being thus described in the certificate of incorporation:

"That the particular business and objects of our society or club, so formed, are the promotion of social intercourse between the representative members of the dramatic profession, and of the kindred professions of literature, painting, sculpture and music, and the patrons of the arts; the creation of a library relating especially to the history of the American stage, and the preservation of pictures, bills of the play, photographs and curiosities connected with such history."

The club has a membership of 1,034 of whom 40 per cent. are members of the dramatic profession or in some way connected in business or art with the stage. How many are actors does not appear. The constitution of the club provides that any member may be suspended or expelled "for cause" by a vote of two-thirds of the board of directors; notice and a copy of the charges having been given to the accused member. The relator has been a member of the club since 1907 and is a writer and author by profession. On April 15, 1911, relator was served with a charge of misconduct and a notice of hearing thereon. The charge read as follows:

"That Mr. Richard Barry, a member of The Players, has been guilty of conduct unbecoming an associate of members of an honorable profession in publishing of and concerning them the following libelous statement in Pearson's Magazine for March, 1911; 'Very few persons on the stage know how to think. In fact, few of them know how to feel, though they all make some sort of bluff at it. Education is unnecessary; general association with humanity is tabooed, and few of the profession read enough to have any grasp on things of the mind. So the matter of sex never enters into the question of pay, except it be to favor the woman.'"

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The relator did not appear in person in answer to the charge, although he offered to do so if requested, but he submitted a written answer in which he protested that nothing in the article upon which the charge was founded reflected expressly or by fair implication upon those members of the dramatic profession who were members of the respondent club. He also submitted the text of the whole article written by him in which the paragraph quoted in the charge appeared. This article, which had appeared in a popular magazine, was written in the fashion which has become familiar to magazine readers of the present day in which literary style and grace is sacrificed to vigorous and dogmatic expression, doubtless with a view to arresting the attention of general readers. The purpose of the article was to demonstrate what the writer believed to be the disadvantage at which women found themselves when placed in competition with men in industrial pursuits. He found that the dramatic profession furnished an exception to the general rule, and alleged that "on the stage one never hears complaint that men get more money than women." Then followed the words quoted in the charge, which were apparently intended to account for the phenomenon that, on the stage, women were as well paid as men. No question is made as to the regularity of the proceeding leading to relator's expulsion, which followed upon the presentation of his defense, and the only question presented by the appeal is as to the sufficiency of the charge to justify an expulsion.

[1] It will be observed that the authority given by the constitution to the directors is to expel or suspend "for cause"; but no precise definition is given as to what shall be deemed to constitute cause. It is generally agreed, however, both in this country and England, that sufficient cause must consist either of an offense against the member's duty as a corporator, or of a serious offense against his duty as a citizen, or of an offense against both duties (Evans v. Phila. Club, 50 Pa. 107; People v. Med. Soc. 24 Barb. 570), and in the nature of the case this must necessarily be so, since a club has no authority or jurisdiction to deal with a member except in his relation to the club. In order to justify expulsion, therefore, a member must be charged with and proven guilty of conduct which can in some fair sense be said to be "improper and prejudicial to the club" (Loubat v. Le Roy, 15 Abb. N. C. 1–20). The English courts have perhaps gone somewhat further than have our own in conceding finality to the judgment of a club committee as to what conduct is improper and prejudicial; but I do not understand that there is any substantial difference of opinion as to the rule that to justify expulsion the cause must be conduct "improper and prejudicial to the club," which, I understand to mean, conduct which in some way or to some degree tends to injure the club materially or in reputation, or is contrary to and destructive of the purpose of its organization. Otherwise a member might be expelled arbitrarily and upon insufficient grounds, and this may not be done. In re Haebler v. N. Y. Produce Exchange, 149 N. Y. 414, 44 N. E. 87; People ex rel. Ward v. Uptown Ass'n, 9 App. Div. 191, 41 N. Y. Supp. 154.

[2] It will be observed upon a reading of the charge against relator that he is not accused of doing anything to the prejudice of the club or its members. In fact, neither the name of the club nor any reference to it appears in the charge or in the article complained of. The charge is that his conduct is "unbecoming an associate of members of an honorable profession," which amounts to little more than an accusation of bad taste on the part of the writer. It is certainly not easy to see how the expression of relator's unflattering estimate of all but a few of the persons on the stage constitutes an offense against the club, or tends in any way to injure it or destroy its usefulness. It might lead to a coolness, or even a suspension of social relations between relator and some of his club fellows; but as was remarked by Mr. Justice Cullen in People ex rel. Ward v. Uptown Ass'n, supra:

"It may be unfortunate that there should be a difference of opinion or disputes in club management; but dissension is a hazard to which all associate action is liable, and clubs no more than other organizations can expect to be exempt from this hazard."

If a member of a yacht club were to say "that few yachtsmen could sail their own boats or knew the science of navigation," it might make him unpopular with some of his fellow members, but could scarcely be said to reflect upon the club as an organization. Even in their resolution giving their reasons for expelling the relator, the directors did not say or even intimate that relator had been guilty of conduct prejudicial to the club. They resolved, as recited by their secretary:

"That the said publication by Mr. Barry mentioned in the charge expressed a contemptuous opinion of the members of the theatrical profession, of which the membership of the club was largely composed; that the said publication was unbecoming an associate of the members of that honorable profession; that it was false and libelous; that it was not explained nor extenuated nor justified by anything contained in his answer and was a good and sufficient cause for his expulsion from membership."

We are unable to find from first to last, in the charge or in the judgment rendered thereon, any declaration on the part of the directors that in their opinion the conduct of the relator had been prejudicial to the club. On the contrary, the sole conclusion which we may draw from their utterances is that relator had proven himself to be an undesirable member of the club. This is not sufficient to warrant expulsion, although it would be a quite sufficient reason for a refusal to elect him if he were an applicant for membership. The learned counsel for the respondent, however, asks us to go further than any court has yet gone, and to hold that the expulsion should be sustained, because it is very improbable that, after the publication of his article, the respondent, if an applicant for membership, could be elected. That test, however, cannot be applied for the very sufficient reason that, speaking generally, no man has any legal right to become a member of a social club and may be refused election for any reason at all, or capriciously or arbitrarily, but, once having become a member, he is entitled to remain such so long as he abides by the rules of the club, and performs his duty as a member, and cannot be arbitrarily or capriciously expelled. On the whole, while the relator's article may

have given just offense to some of the club's members, we cannot say that its publication was prejudicial to the club or constituted conduct incompatible with relator's duty to the club. The expulsion was therefore unjustified.

Order reversed, with $10 costs and disbursements, and motion for a writ of peremptory mandamus granted, with $50 costs.

LAUGHLIN, CLARKE, and MILLER, JJ., concur.

INGRAHAM, P. J. I dissent from the reversal of this order. The Players Club was organized in the year 1888; the particular objects being the promotion of social intercourse between the representative members of the dramatic profession and of the kindred professions of literature, painting, sculpture, and music, and the patrons of the arts. By the constitution, to which the plaintiff when he became a member of the club subscribed (article 12), it was provided:

"Any member may be suspended or expelled for cause by a vote of two-thirds of all the members of the board of directors; one month's previous notice in writing having been given to the member with a copy of the charge preferred against him."

The "cause" which would justify the board of directors in expelling a member is not specified, but necessarily the cause must be one which would in a substantial manner affect the interests of the club, or such conduct as to show that the member against whom charges were presented should not continue to be a member of the club. Under this provision of the constitution a broad discretion was vested with the directors. It was for them to determine whether the conduct of a member was such that his continued membership would be an injury to the club or would be inconsistent with the objects for which the club was organized. It was this particular association organized to promote intercourse between the representative members of the dramatic profession and of the kindred professions of literature, painting, sculpture, and music, and the patrons of the arts, that was in question, and it seems to me that any act of a member that could possibly affect this object for which the club was organized would be a "cause" which would justify the directors in determining the question as to whether the members should be suspended or expelled. It might be that the conduct of the relator in a club or organization organized for another purpose would not justify his suspension or expulsion; but we have to consider the purpose for which the defendant was organized in determining when his conduct was such as did or tended to affect the welfare of the club. Certainly the court has not the right to substitute its judgment for that of the directors in determining the sufficiency of the cause. When a body of men associate themselves together for purely social purposes, where no pecuniary rights are involved, and where the constitution of the association expressly gives to the directors broad discretion as to suspension or expulsion, it seems to me that, when a court is asked to review the action of the directors acting within the express powers conferred upon them, the question mainly resolves itself into one of good faith and the exercise of that discretion should not be interfered with except in an extreme

case where the charges are so clearly frivolous as not to call upon the directors for the exercise of the discretion expressly conferred upon them.

. The object of this association, as before stated, was the promotion of social intercourse between the representative members of the dramatic profession, and of kindred professions of literature, painting, sculpture, and music, and the patrons of the arts. The relator was accused of having written a magazine article directly reflecting upon the members of the dramatic profession, and I think it appears from the papers in opposition to this application that the publication of this article had caused intense indignation among the members of the club who belonged to the dramatic profession. Whether we think members of the dramatic profession should have been incensed at this publication or not seems to me to be immaterial. As a matter of fact they were. We will assume that the relator belonged to the profession of literature, and thus was a member of one of the professions within which it was the object of the club to promote social intercourse. If a member of the profession of literature had so conducted himself as to cause irritation and exasperation among the members of the dramatic profession who belonged to the club, his conduct would be such as would tend to make social intercourse impossible and not promote it, and thus his conduct would tend to defeat the object for which the club was formed, instead of promoting it. Thus charges against a member of such a club of conduct which directly tended to defeat the objects for which the club was organized were, I think, within this provision of the constitution and justified the directors in taking cognizance of the charges and determining whether or not they required suspension or expulsion. Having arrived at this conclusion, it seems to me necessarily to follow that, the directors acting within the authority conferred upon them, and exercising the discretion expressly given to them by the constitution by which the relator is bound, the court had no authority to review the exercise of that discretion.

In Loubat v. Le Roy, 15 Abb. N. C. 1, it was said that, in order to justify expulsion, a member must be charged with and proven guilty of conduct which can in some fair sense be said to be improper and prejudicial to the club. If he is charged with conduct which itself tends to destroy the objects for which the club was organized, and which did have that effect upon a substantial number of the members of the club, then it seems to me that such conduct was prejudicial to the club and the objects which it was formed to promote. I do not understand that the courts of this state have ever approved to its full extent the case of Evans v. Pennsylvania Club, 50 Pa. 107; but, even adopting the rule laid down in that case, it seems to me that, when it appeared that the conduct of the appellant had caused in the minds of a substantial number of the club members a feeling of anger and resentment which would tend to destroy the harmony and intercourse which the club was organized to promote, it can be said that the appellant was guilty of conduct which in a fair sense was prejudicial to the club.

I think, therefore, that the order appealed from should be affirmed.