**BERRIEN v. POLLITZER et al.**

**No. 9555.**

United States Court of Appeals
District of Columbia.

Argued Oct. 8, 1947.

Decided Dec. 15, 1947.

Mr. Spencer Gordon, of Washington, D. C., with whom Mr. Charles A. Horsky and Miss Eleanor Sessoms, both of Washington, D. C., were on the brief for appellant.

Miss Olive B. Lacy, of Washington, D. C., for appellees Meta Grace Keebler et al.

Mr. John H. Connaughton, of Washington, D. C., for appellees Dorothy Spinks and Claire Wadden.

Mr. Albert E. Conradis, of Washington, D. C., for appellee Marie Moore Forrest.

Before EDGERTON, CLARK, and WILBUR K. MILLER, Associate Justices.

EDGERTON, Associate Justice.

The plaintiff sued for an injunction against exclusion of herself and similarly-situated members of the National Woman's Party from the Party's headquarters at 114 B Street Northeast in Washington, D. C. Some of the defendants are members of the Party and others are its employees. The District Court, after a hearing on a motion for a preliminary injunction, dismissed the complaint. The plaintiff appeals.

The court found substantially the following facts, most of which are alleged in the complaint. The National Woman's Party is a nonstock nonprofit corporation, organized under the laws of the District of Columbia, for the purpose of securing complete equality for women. It owns the building in suit. This building is worth more than $100,000. It contains "a valuable and unique library, working facilities for * * * members, and facilities for meetings and formal and informal gatherings of members necessary to the work of the National Woman's Party. Said headquarters and its facilities have in the past been used and open to use by all members." In January, 1947, a dispute arose within the Party, in consequence of which some members termed others "insurgents." Certain of the defendants, purporting to act as the National Council of the Party, adopted the following resolution:

"Resolved, that all elected and appointed members of the National Council who have identified themselves with the insurgent group be asked to resign and that failure to acquiesce within ten days of receipt of a letter to this effect will be construed as a resignation.

"Be it further resolved that *all* members of the insurgent group be temporarily excluded from Headquarters during pendency of a decision on the question in dispute." The bylaws of the Party provide that its National Council shall have control and management of its affairs. Plaintiff is a member of the Party and of the National Council, but she received no notice of the proposed resolution or of the meeting at which it was adopted. "Since the passage of the resolution the defendants have deprived, and are now depriving, plaintiff and certain other members of the National Woman's Party of access to said headquarters and the enjoyment and use of the same."

The complaint also states that a separate suit is pending to establish the validity of an election at which several of the present defendants were replaced by other persons as members of the National Council. The plaintiff does not ask the court to decide that question in the present suit.

█ The court held that it had no jurisdiction to grant an injunction because it "can interfere only to protect property rights." We think the court erred.

The doctrine that equity jurisdiction is limited to the protection of property rights conflicts with the familiar principle that equity may give preventive relief when the legal remedy of money damages, if available at all,[1] is inadequate to redress a wrong. Obviously money has little in common with such personal rights or interests as reputation, domestic relations, or membership in nonprofit organizations. Money, one form of property, has much more in common with other forms of property. Invasions of personal interests are accordingly *less* capable of translation into money terms than invasions of property interests. No one can seriously contend that money is an adequate remedy for all sorts of personal wrongs. Clearly "injunctions and similar flexible remedies of equity are much better suited than a speculative action for damages to protect interests of personality * * *."[2]

The tradition that equity protects only property rights has been traced[3] to a dictum of Lord Eldon which was not only unnecessary but contrary to the decision which evoked it. The decision was that a defendant should be restrained by injunction from publishing personal letters which the plaintiff had written to him.[4] Dean Pound has pointed out that "the real injury in Gee v. Pritchard was an invasion of the right of privacy. In result therefore, a case in which we are told that equity has no jurisdiction to secure interests of personality, and the case always cited since for that proposition, was a pioneer decision finding a way for securing the then unknown right of privacy * * *. Property which had no value as property * * * was a mere formal peg on which to hang the substantial relief."[5]

"Law in action is breaking away from the property limitation which still receives much sanction from law in books."[6] Even in books, the limitation has begun to lose ground.[7] Judge Qua, for the Supreme Judicial Court of Massachusetts, has just reviewed the subject in a distinguished opinion from which we quote. "In reading the decisions holding or stating that equity will protect only property rights, one is struck by the absence of any convincing reasons * * *. We cannot believe that personal rights recognized by law are in general less important to the individual or less vital to society or less worthy of protection by the peculiar remedies equity can afford than are property rights. * * * We believe the true rule to be that equity will protect personal rights by injunction upon the same conditions upon which it will protect property rights by injunction. * * * A number of courts have tended toward this view. Legal writers support it. There is no such body of authority opposed to it in this [jurisdiction] as to preclude its adoption here."[8]

Even thirty years ago, when Dean Pound published his article on Equitable Relief. Against Defamation and Injuries to Per-

---

[1] Cf. Chafee, Does Equity Follow the Law of Torts? 75 U. of Pa. L. Rev. 1, 27, 35.

[2] Chafee, The Internal Affairs of Associations not for Profit, 43 Harv. L. Rev. 993, 998.

[3] Pound, Equitable Relief Against Defamation and Injuries to Personality, 29 Harv. L. Rev. 640, 642.

[4] Gee v. Pritchard, 2 Swanst. 402, 36 Eng. Rep. 670 (1818).

[5] Pound, op. cit. supra note 3, at 643, 644.

[6] Chafee, op. cit. supra note 2, at 998-999.

[7] "Although the courts have been reluctant to admit that equity had jurisdiction to enforce or protect merely personal rights, and have usually discovered at least a nominal property right on which to base the granting of equitable relief, there are a few cases in which the courts have had the courage openly to repudiate the doctrine that only property rights will be protected, and to assert the jurisdiction of a court of equity to protect personal rights also." 14 A.L.R. 300.

[8] Kenyon v. City of Chicopee, 320 Mass. 528, 70 N.E.2d 241, 244-245.

sonality,[9] there were a few classes of cases in which the property limitation, though often respected in form, was disregarded in substance. One such class involved "wrongful expulsion from social clubs where the real wrong complained of is the humiliation and injury to feelings. Here * * * courts of equity generally insist upon some shadow of a property interest, however trivial; actually protecting the feelings, but purporting to protect only the pocketbook * * *. Something is found which gives the camel's nose legitimate standing in the chancellor's tent, and the whole beast follows in order to dispose of the case completely. Such devices never obtain except when we are dealing with a moribund rule * * *."[10] "It seems plain that the club member's interests of personality should be the object of consideration regardless of the nature of the club, and that the real question is whether the injury to these interests is sufficiently serious to warrant judicial interference with the internal affairs of a social organization. The court's willingness to decide this fundamental question ought not to depend on the presence or absence of an insignificant interest in club property * * *. The member's relation to the association is the true subject matter of protection."[11]

Approximately this view has long been enforced, if not distinctly expressed, in some jurisdictions[12] including the District of Columbia. A plaintiff expelled from a corporation or association not organized for profit need not show that he has even a nominal property interest to protect.

Fifty years ago this court recognized that if a member of an incorporated club were expelled without a "regularly conducted" trial, on due notice, by "constituted corporate authorities," and a "judgment arrived at * * * in good faith," specific relief could be granted.[13] Relief was denied solely because the club had met those requirements. The case contains no suggestion that a property right is necessary.[14] Some years later we squarely held that a property right is not necessary. Though courts are sometimes reluctant to interfere in the internal affairs of churches,[15] we held that a member expelled from a church in violation of its procedural rules was entitled to relief in equity, and we pointed out that "no temporal rights" of the member were involved.[16]

It is obviously immaterial that the National Woman's Party is called a party and not a club or a church.

■ Appellees suggest that appellant has not been expelled. We think the resolution purports to expel her, but we also think it immaterial to the court's jurisdiction[17] whether she has been expelled from membership or merely excluded from a member's essential privilege of using the Party's quarters. She has been excluded without a "regularly conducted" trial, on due notice, by "constituted corporate authorities," and a "judgment arrived at * * * in good faith." The District Court has jurisdiction to grant an injunction. It should proceed to determine whether it should exercise this jurisdiction.[18]

Reversed.

---

[9] Supra note 3. Cf. Long, Equitable Jurisdiction to Protect Personal Rights, 33 Yale L.J. 115.

[10] Pound, op. cit. supra note 3, at 672.

[11] Chafee, op. cit. supra note 2, at 1000, 1007.

[12] E. g. Barry v. The Players, 147 App. Div. 704, 132 N.Y.S. 59, affirmed 204 N.Y. 669, 97 N.E. 1102.

[13] De Yturbide v. Metropolitan Club, 11 App.D.C. 180, 195. Cf. Chafee, op. cit. supra note 2, at 1014; Protection of Membership in Voluntary Associations, 37 Yale L.J. 368. It is immaterial that the form of action in the De Yturbide case was mandamus.

[14] The opinion states that the club had legal authority to own property but does not state that it owned any.

[15] Pound, C., in Bonacum v. Harrington, 65 Neb. 831, 91 N.W. 886; Chafee, op. cit. supra note 2, at 1023 ff.

[16] Taylor v. Jackson, 50 App.D.C. 381, 383, 273 F. 345, 347. Cf. United States ex rel. Johnson v. First Colored Baptist Church, 56 App.D.C. 324, 13 F.2d 296.

[17] Cf. Stein v. Marks, 44 Misc. 140, 89 N.Y.S. 921, 926.

[18] Cf. Chafee, op. cit. supra note 2, at 1008, 1020 ff.