T. H. HOWARD, Appellee, v. THE NATIONAL FRENCH DRAFT HORSE ASSOCIATION et al., Appellants.

P. SHEHAN, Appellee, v. Same Defendants, Appellants

ANIMALS: Pedigree or Certificate of Breeding—Fraud in Issuance—
1 Cancellation—Innocent Party. A ''certificate of the breeding'' of an animal issued by an association engaged in such business is subject to cancellation for fraud in its original issuance, even against one who in good faith purchased such animal in reliance on such certificate and received an assignment of the certificate. Such certificate is a proclamation to all the world that it speaks the truth. If in fact untrue and such certificate is irrevocable,

then the fraud would be perpetuated. It is unthinkable that the law would commit a fraud by perpetuating a fraud.

**EQUITY:** Jurisdiction Retained for Full Settlement of Controversy.
2  Equity, having obtained jurisdiction of a controversy, will retain it under a general prayer for equitable relief and do full justice and end the litigation, if possible, even though in so doing it may pass on matters ordinarily cognizable at law.

PRINCIPLE APPLIED: An association engaged in certifying to the breeding of draft horses, and failing to exercise due care but intending no wrong, was induced by fraud to certify to the breeding of a certain animal. Plaintiff bought the animal and took an assignment of the certificate in good faith reliance thereon. Later, the association secured possession of the certificate and claimed the right to cancel it for the fraud in its issuance. Plaintiff in equity sought to prevent the cancellation. *Held,* the defendant had the right to cancel the certificate, but inasmuch as plaintiff had been damaged by the fabricated certificate, the equity court would retain jurisdiction, *assess the damages against defendant,* and end the litigation.

**ESTOPPEL:** Representations Not Known to be True, Made as of
3  Knowledge—Reliance Thereon—Damage. Representations made as of one's own knowledge, which he does not know to be true, and which induces another to part with his money or property, fixes liability. The maker will be estopped to plead that he did not intend to defraud. Emphatically true is this when the representations are made for a consideration and without due care.

PRINCIPLE APPLIED: (See No. 2.)

**DAMAGES:** Remoteness—Infinity of Causes—Animals—Fabricated
4  Pedigree—Foals. Remote damages cannot be recovered. So held in the case of the foals of a mare with a fabricated pedigree.

PRINCIPLE APPLIED: An association, engaged in the business of registering horses, was induced, through gross deception, to issue a certificate attesting to the breeding of a certain mare. The certificate was false. Plaintiff purchased the mare in good-faith reliance on the certificate, paying $500, which would have been her value had the certificate been true. As it was, she was worth $200. Plaintiff bred the mare. Damages were claimed for both the lessened value of the mare and her foal. *Held,* the lessened value of the mare was proximate, that of the foal too remote for recovery.

*Appeal from Jefferson District Court.*—HON. D. M. ANDERSON,
Judge.

WEDNESDAY, APRIL 7, 1915.

THE opinion sufficiently states the case.—*Affirmed.*

*Leggett & McKemey,* for appellants.

*Charles C. Heninger* and *Crail & Crail,* for appellees.

WEAVER, J.—The petition filed by the plaintiff Howard states that the defendant is a corporation engaged in the business of registering horses and issuing certificates of breeding upon application made to it for that purpose and payment of certain registration fees; that in September, 1908, one DeClow obtained the registration by defendant of a certain mare, Flora; that she was so registered as No. 17322 and the corporation issued to him its certificate thereof purporting to evidence the pedigree of the mare. He further alleges that, after such registration and relying thereon as a correct and truthful representation, he purchased the mare from DeClow, who also assigned and transferred to him the certificate of registration. Thereafter, in the year 1911, plaintiff applied to defendant to obtain the registration of a colt, Dinah, produced by the mare Flora, and with such application presented his certificate of Flora's registration; but the defendant without just cause not only refuses to admit the colt to registry but retains the original certificate and refuses to return or surrender it to plaintiff and threatens to cancel and destroy it, to his irreparable injury. On this showing, he prays a writ of injunction restraining defendant from canceling or destroying the certificate and for such other and further relief as he may be found entitled to in the premises. In an amendment or supplement to his petition, plaintiff pleads a substantially similar state of facts as to a colt Edna, produced by the mare Flora in the year 1912, for the registration of which he has applied to defendant and made tender of the necessary fees; but defendant without cause refuses to make or certify such registry. The certificate issued for the mare

Flora is to the effect that upon the application of DeClow there had been recorded in the National Register of French Draft Horses "The mare Flora No. 17322." It also describes the animal, states the date of her foaling and the names and registry numbers of her sire and dam, together with names and registry numbers of the sires and dams through which the alleged pedigree of each is traced. The name of the breeder of Flora is given as John Schroeder of Harper, Iowa. The instrument is signed by the secretary of the company or association and his signature is attested by a corporate seal.

Answering the petition, the defendants admit the corporate capacity of the association and that it is engaged in the business of registering and issuing certificates of breeding for pure bred French Draft horses upon application made to it for that purpose and payment of a prescribed fee therefor. They admit registering the mare Flora upon the application of DeClow and issuing to him a certificate thereof and that such certificate is now in their possession. They further admit that plaintiff applied for the registration of the colt Dinah and the colt Edna, that the applications were denied and that defendants refuse to return the original certificate of the registration of Flora to the plaintiff. In justification of their actions in this respect, defendants further plead that while the application of DeClow for the registration of the mare Flora was in due form and contained representations which, if true, entitled her to registration, said representations were falsely and fraudulently made, and as a matter of truth and of fact, the mare was not eligible to registry and she had not the breeding or the pedigree claimed for her, whereby a fraud was perpetrated upon the association; and, said mare having thus been fraudulently registered, her colts Dinah and Edna were ineligible and the applications for their registry were rightfully refused. Defendants therefore pray for the dismissal of plaintiff's petition and for a decree authorizing them to cancel the certificate No. 17322 and for such other and further relief as the court may find equitable.

Attached to the answer is a copy of the application upon which the mare Flora was admitted to registry. It sets forth in substance the same statements which appear in the certificate and is signed by the names "John Schroeder, breeder," and "John Schroeder, owner," and is verified by the affidavit of John Schroeder. The defendant's Rules of Entry are also set out and provide, among other things, that to make a mare eligible to entry in the National Register of French Draft Horses she must have four "top crosses" in each case by sires recorded in said National Register. The rules further provide that all applications shall be sworn to and shall be accompanied by affidavit of the breeder of each dam, and that if any person wilfully misrepresent any of the material facts, or shall sell or barter any horse as recorded which has not been registered, he shall be liable to be excluded from the register.

In reply, the plaintiff pleads that defendants, by their laches and negligence, are estopped to deny the truth or validity of the registration and cannot rightfully cancel such certificate or deny registration to the colts of the mare so certified.

The other case named in the caption of this opinion— Shehan v. National French Draft Horse Association et al.— is in all material respects similar to the one above stated. At the time the mare Flora above mentioned was admitted to registry by the defendant, it also admitted another mare, Maud No. 17321, upon application of the same person and upon evidence of the same character that she had been bred and reared by John Schroeder of Harper, Iowa, who was also breeder of her first, second, third and fourth dam, each being a registered animal. The mare was sold to Shehan, upon whose application defendant admitted to registry a colt, Thorney No. 20888, foaled by Maud. Thereafter Shehan applied for registry for two other colts produced by Maud. The application was denied on the ground that the registry of their dam had been fraudulently obtained and defendants refused to return the certificate to the owner and proposed to cancel it.

Shehan brought suit to restrain such action and for such other relief as to the court should appear equitable. The same defense was pleaded as in the first described case. By agreement, the cases were tried together.

Upon hearing the evidence, the court ordered the cancellation of the certificate of registry in each case as having been obtained by fraud. It found, however, that the plaintiffs had purchased the mares in good faith and in reliance upon the registry and certificate of breeding issued by the association, and by reason thereof had paid an increased price for the animals, and that while the court ought to and would permit the cancellation of such registry and certificates, yet it would also require the defendant to respond in damages which plaintiffs sustained in the purchase of the dams Flora and Maud, and a recovery of $300.00 was allowed in each case. Damages by reason of the colts not being eligible to registry were thought by the court to be too remote and none were allowed. Judgment was entered accordingly. Both parties appeal. The appeals of the defendants being first perfected, they alone will be spoken of as appellants in the further progress of this opinion. The appeals in the two cases have been submitted upon the same record and will be disposed of in one opinion.

The evidence tended to show without material controversy that the mares had been reared by Schroeder, who knew little or nothing about their pedigree. He sold Maud to one Vercheval, who in turn sold her to a man known as Brown. Shortly after this, Schroeder sold Flora to Brown. In neither of these sales was the animal represented or described as registered or eligible to registry. Brown either purchased the animals for DeClow or later sold them to him. A week or two after Brown acquired them, he went to Schroeder and asked him to sign a paper, saying, "It is only a transfer to show who I bought the mares from." After some hesitation, Schroeder signed and swore to the affidavit. He says now as a witness

that he had no knowledge or information that the paper was to be used in procuring a registry of the mares and that, to the best of his knowledge and belief, all that part of the paper which represents him as saying that he was the breeder of the first, second, third and fourth dams of the mares and knew of their pedigree and breeding was then blank and must have been inserted therein after he made and delivered the instrument and without his knowledge, consent or approval. He was not in fact the breeder of said dams and had no knowledge with respect thereto. On the contrary, it was shown without serious dispute that neither the mare Flora nor Maud was eligible to registry under the rules of the association. It is further shown with practical certainty that these registries were obtained by the fraud of Brown alone, unless it may be inferred that DeClow was implicated therein, and that the plaintiffs Howard and Shehan purchased the mares in good faith without notice and in reliance upon the defendant's certificate of registration. Howard paid $525 for Flora and Shehan paid $500 for Maud, and the evidence tends to show that these would have been about their fair market values as registered animals, and that in each case the market value of the animal, if unregistered and ineligible, was about $300 less. At the commencement of this suit, Maud had three and Flora two living colts still owned by their respective breeders, and in each instance the value of the colt as unregistered and ineligible to registry was very materially less than it would be if the registration of the dam was maintained and registry of such colts was allowed. In short, it is to be said of the main facts in these cases that there is room for little if any doubt, and the question of law is whether the plaintiffs are entitled to any remedy or relief against the defendant association, and if so, whether the same has been properly applied in the decree entered by the trial court.

I. First perhaps in natural order of consideration is plaintiffs' appeal from that portion of the decree which au-

thorizes and directs the cancellation of the registry of the

1. ANIMALS:
pedigree or
certificate of
breeding:
fraud in is-
suance:
cancellation:
innocent party.

mares Flora and Maud and the colt of the latter animal. It is argued for plaintiffs that such registry and certificates are conclusive as against the association and that it should not be allowed in law or equity to stultify its own record to the injury of one who has purchased a registered animal in reliance upon such record. There is a measure of justice in such contention, and if the dispute were one affecting only plaintiffs and the association, the propriety of applying the rule so stated could not well be denied. But the issue is of a broader character. The intent and proper purpose of the registry and certification of these mares was not for the benefit of plaintiffs alone, but for the benefit of all persons who may at any time become purchasers of such animals or of the colts produced by them. One of the principal objects of the association, we may assume, is to promote the pure breeding of the French Draft horse and to afford evidence to the world that a horse which it has registered and certified is the product of such breeding. The value of such evidence depends, of course, upon the extent to which the association justifies the confidence of buyers and breeders that its work is done with care, accuracy and honesty. It is, perhaps, not humanly possible that a register of this kind shall be always and absolutely free from mistake or that an ineligible animal shall not at times by fraud or otherwise be admitted thereto. If such mistakes are not the subject of correction in some form and a fraudulent entry may not be vacated or cancelled by some proper proceeding for that purpose, then the law which is designed to prevent fraud and deceit is perverted into a means of perpetuating them and multiplying their evil consequences. It has been the just pride of our jurisprudence that neither law nor equity will give countenance to fraud and that, no matter how novel or ingenious its scheme, the courts will interfere to prevent its consummation and to redress the injury resulting therefrom to innocent persons. To hold that

a registry once secured by fraud is irrevocable would be to destroy the value of the record as a means of maintaining and evidencing the purity of the blood and breeding of the animals entered therein, and the purchaser or breeder consulting such record would have no assurance that a pedigree there found is not a bald invention. It is therefore in the interest of sound public policy as well as of private right that when a fraudulent entry is discovered, the association shall be empowered to vacate or set it aside. It is not here necessary to prescribe any exclusive method by which such vacation is to be accomplished. It is enough to say that in our judgment it is a situation of which a court of equity will take cognizance; and having before it all parties in interest, and the fraud being clearly established, it will order the cancellation of such registry, imposing such terms, if any, as equity and good conscience may require. None of the precedents cited by the plaintiffs go to the extent claimed by counsel. The general doctrine of estoppel by deed and by conduct is too well established to admit of question, and as we have already said, conditions may be supposed under which the defendant association would be held estopped to deny the truth or correctness of the certificate. But the circumstances here are out of the ordinary. A certificate of registry in a herd book of recognized authority is a proclamation to the world. It is intended to be passed to each successive purchaser of the registered animal, giving to it a character, reputation and substantial value which it would not have except for its admission to registry. So long as it remains uncancelled, the association which issued it stands in the position of saying to every buyer, "This is the pedigree and breeding of the animal here described." If, then, when the association discovers that the entry was fraudulently obtained, it is held estopped to deny or cancel it because of the resulting injury to the present owner, it is placed in the position of one who is compelled by law to certify to the truth of a known falsehood as often as the animal so registered changes owners. Such a ruling would,

in our opinion, be contrary to all sound principle, and we are disposed to hold that the court below was right in ordering the cancellation of the entry and certificate. This is not to say that the plaintiffs are without remedy, but rather that it is well within the power of a court of equity to devise a remedy by which substantial redress may be had without perpetuating the fraud by which they have been injured.

So far as the plaintiffs' appeal relates to their claims for damages on account of the exclusion from registry of the colts produced by the mares Flora and Maud, it will be considered in a later paragraph of this opinion.

II. The defendant's appeal turns upon the question whether the court was authorized to assess damages in favor of the plaintiffs. The point is made that the issues as pre-sented by the pleadings are not broad enough to permit such recovery. The objection cannot be sustained. The plaintiffs did seek specific-ally for relief by way of injunction but further prayed generally for such other and further relief as the court might find just and equitable in the premises. The defendants traversed plaintiff's allegations of fact and pleaded affirmatively other facts on which they asked specific relief against the plaintiff and also for general relief. We have already held that the case thus made by the pleadings is properly cognizable in equity, and it is a thoroughly well settled proposition that when equity has once acquired juris-diction of a controversy, it will retain it for complete settle-ment and adjudication of all questions material or necessary to accomplish complete justice between the parties and make further litigation over the same subject-matter unnecessary. *Reiger v. Turley,* 151 Iowa 491; *Fisher v. Trumbauer,* 160 Iowa 255; *Thomas v. Farley,* 76 Iowa 735; *Mudge v. Liver-more,* 148 Iowa 472.

The case at bar is clearly within the rule, so far at least as the question of pleading is concerned.

Turning to the merits of the case, it is argued for the

2. EQUITY: jurisdiction retained for full settlement of contro-versy.

appellants that there is no contract relation between the asso-
ciation and plaintiffs, and that, if the registration and certi-
fication of the animals does involve any con-
tract obligation on the part of the association,
it was to the person who applied for such reg-
istry and to no other person, and has been
fully performed. So too, counsel say, plain-
tiffs cannot recover upon any theory of tort because the asso-
ciation had no dealings with them, made no representations to
them or for their benefit, and was charged with no duty to the
purchasers of the registered animals for violation or neglect
of which plaintiffs can demand compensation. This argument
is expressly grounded upon the theory that the association
by its certificate in this case makes no statement or rep-
resentation of fact except that the animal there named had
been registered upon the application of DeClow. The pedigree
which it sets forth, counsel insist, is not a statement or repre-
sentation by the association, but is merely a statement of what
DeClow's application contains, for the correctness of which
the association assumes no responsibility whatever. If this
be true, and the matter of registration and certification of
pedigree is nothing more than a method of recording and re-
porting the claims made by owners for the breeding of their
horses, and the association assumes no responsibility for the
truth of such claims concerning horses which it admits to
registry, then the whole business is but idle child's play and
the avowed purpose of promoting the pure breeding of such
animals is wholly lost sight of. But we think appellant will
be slow to accept the logical conclusion of its own argument
and admit that its only function is the merely passive one of
recording the claims asserted by horse owners, or that buyers
of horses which it has admitted to registry may not rightly
or safely rely upon its certificate of pedigree. Indeed, its
attitude in this case is a practical declaration that such is
not its interpretation of its own functions or obligations and
that it has a duty to perform, not merely to those who present

3. ESTOPPEL:
representations
not known to
be true, made
as of knowl-
edge: reliance
thereon:
damage.

horses for registry, but also to the public, and especially to those who look to it and rely upon its records for authentic evidence of the blood and breeding of horses. Otherwise, it has no standing in this case to demand the cancellation of the registry of the horses in controversy. Nor is the certificate in its terms capable of the narrow construction which counsel seek to put upon it. True, it recites that the registry has been made upon the application of DeClow, but it nowhere and in no manner says or implies that the pedigree which follows is a mere recitation of the claims stated in such application. On the contrary, the fair and reasonable implication is that the association has found the claim of DeClow to be true and that the animal named is of the pedigree therein set out. That the association did not feel bound by the application and that it undertook, in part at least, to certify to the pedigree from its own knowledge and investigation is clearly indicated by the fact that the breeding of the mare in each case as given by the certificate varies in several items from that given in the application, in that the registry numbers of the sire and of the first dam and second dam differ entirely from the corresponding numbers given by the applicant. The chief, if not the only, purpose of issuing such a certificate and placing it in the hands of a horse owner is to enable him to exhibit it to buyers and others who may be interested as proofs of the breeding of the animal and thereby enhance its desirability and value. It must be expected that it will be relied upon by purchasers and will pass from hand to hand with each change of ownership. It is a material representation affecting the value of the horse, and until withdrawn or cancelled for sufficient cause, it remains a continuing present representation addressed to all persons who may desire to purchase. It is an elementary proposition that if one person induces another to part with his money or property by knowingly false representations or by representations made as of his own knowledge, which he does not know to be true, he is liable in damages to him who is thus misled to his injury.

The remedy is sometimes found in an ordinary action at law for recovery of damages and again is worked out in equity by an application of the law of estoppel which denies to the party making the representations the right to show there was no intent to defraud where the party to whom they were made has acted upon them. *Bispham's Equity* (6th Ed.) Sec. 282 to 288; *Smith v. Cramer,* 39 Iowa 413, 416; *Kirchman v. Coal Co.,* 112 Iowa 668, 675; *Day v. Lown,* 51 Iowa 364, 368.

For the purposes of this case, if it was within the authority of the court below, while granting the defendants the affirmative relief which they demanded, to require them also to do equity by compensating plaintiffs for the injury suffered by them, it will not be necessary for us to discuss or determine what right, if any, plaintiff may have had to recover at law. That the court did have such authority upon the showing made is not open to serious doubt. Of the rule which holds a party to responsibility for his representations, notwithstanding his good faith, where another has acted upon them, there are familiar examples in the books and its application and enforcement are of frequent occurrence in judicial proceedings. For example, suppose A, desiring to give B credit and standing among business men, gives him a letter addressed to "To whom it may concern," certifying him to be a man of large wealth and perfectly good for all debts he may contract, and thereafter, finding that the letter has been delivered to a bank which claims to have given B credit upon the strength of it, he brings suit to enjoin further use of the writing and for its cancellation and surrender to him. It scarcely needs argument to sustain the proposition that if the bank has in good faith given B credit relying upon the letter, the fact that A was grossly imposed upon and deceived as to B's financial condition will not entitle him to a cancellation or surrender of the letter except on condition that he pay or satisfy the bank's claim. And this would be emphatically true if the certification of B's financial responsibility had been given for a valuable consideration and not as a mere

courtesy. The hypothetical case is not, of course, identical in its facts with the one at bar, yet in principle they are not widely different. The defendant association for a money consideration certified the horses as having the pedigree and breeding therein described. Such certification gave and must have been intended to give the animals a greater value and readier market than they would have had without such authentic attestation of their blood and breeding. Having thus promoted the sale of the horses to plaintiffs at a price materially greater than their value as animals ineligible to registry, it is clearly equitable that, as a condition of cancelling the registration and annulling the certificate which it had issued, the association shall make good the loss resulting to the plaintiffs, and the decree requiring such reparation must, therefore, be approved.

It may also be added that in undertaking to serve the public in general and horse owners in particular by establishing and maintaining a registry of breeding, for which service a compensation was exacted, the association was at least bound to conduct the business with reasonable care to make the records speak the truth, and this duty it owed not alone to the owners presenting horses for registry, but to every person who might reasonably be expected to rely thereon or be influenced thereby in dealing with reference to such property. Failure in such duty would be actionable negligence and there is sufficient evidence in this case to justify a finding that in registering and certifying the breeding of the mares Flora and Maud, due care was not exercised.

III. The trial court assessed damages in favor of plaintiffs as of the date of their purchases for the difference between the market values of the mares Flora and Maud as grade animals not entitled to registry and the market value they would have had if possessed of the blood and breeding shown by the certificates of the defendant association, but no damages were allowed for the loss so sustained in the value of the colts produced by these mares after

4. DAMAGES: remoteness: infinity of causes: animals: fabricated pedigree: foals.

their purchase. From this ruling with respect to the colts, plaintiffs appeal. It is their theory that the depreciation or loss in the value of the colts because of the cancellation of the registry of the dams is the direct and proximate result of the same act which occasioned the loss for which a recovery was allowed by the court, and that the same rule or principle which will uphold the assessment of damages in the one instance requires a like holding in the other. But the position thus taken is untenable. The thing which plaintiffs claim and prove they were induced to do by the act of the association was the purchase of the mares Flora and Maud in reliance upon their alleged breeding and pedigree. The colts here in question were not then in existence. Whether the mares would ever produce colts was then a mere possibility, concerning which the certificate of the association contained no representation or assurance. It may be that the plaintiffs bought the mares with the intent to utilize them as breeders of pure bred French Draft horses. If so, the assumed usefulness of the animals for that purpose was doubtless one of the principal elements which gave them increased value over the price they would have commanded as ordinary grade mares. This increased value, which plaintiffs, as witnesses, estimate at $300 for each animal, represents or includes what they were worth as breeders of pure bred colts in excess of their value as breeders of grade stock, and such sum necessarily represents or includes the immediate or proximate loss or damage which the purchasers sustained in being induced to buy mares of an inferior breeding upon representations that they were of a pedigree entitling them to registry. When, therefore, the trial court awarded damages to the full amount of the difference between these values, it provided compensation to plaintiffs for all the loss to which they had been directly or proximately subjected by the misrepresentation of which they complain. The fact that colts not then in being and thereafter produced proved to be of less value than they would have been if eligible to registry is too incidental and remote to justify an assessment of

additional damages. Stated in other terms, plaintiffs, according to their counsel, were purchasing brood mares. They were not purchasing colts which might be produced in the future, but brood animals, in which the possibility of reproduction was an element of value affecting the price asked and paid. If plaintiffs were injured in the legal sense of the word, it was in being thus induced to pay more than the property was worth, and their injury is to be redressed by allowing them to recover on that basis.

The principle here applied as to the measure of the recoverable damage is not altogether unlike that applied by this court in *Crawford v. Williams*, 48 Iowa 247, where suit was brought by the owner of a registered heifer against the owner of an unregistered bull which was unlawfully allowed to run at large and come in contact with the heifer. The plaintiff was there allowed to recover, not the difference between the inferior calf produced and the value which it would have had if eligible to registry, but the difference in the value of the heifer as a breeder of fine stock before meeting the unregistered bull and its value immediately thereafter. In other words, there, as here, the damage, if any, is such as affects or has reference to the value of the animal about which the controversy has arisen, and not to its future or possible progeny. The cases cited for plaintiff, where one selling a diseased animal has been held in damages not only for loss in its value but also for the infection of other animals belonging to the purchaser, and where a vendee of property with a warranty may on rescission for breach thereof recover cost of keeping the property before the breach was discovered, and other precedents of kindred character have no controlling application here. In all such cases, that for which additional damages have been allowed is the direct or immediate result or consequence of the original wrong or default complained of, a condition which does not here appear. The remoteness of the alleged damages in this respect is evident upon a little reflection. If plaintiffs are entitled to recover damages with ref-

erence to colts produced by these mares since the purchase and before the trial below, why may they not continue to breed the mares every year during the period of their productive existence and each year have a new cause of action against the association? If so, then why may they not repeat the process with each succeeding generation of horses whose lineage may be traced back to Flora and Maud? There is but one place to stop, and that is with the animals which were given a fabricated pedigree whereby plaintiffs were induced to purchase them at a price beyond their value. That excess is the measure of their loss and of their right to recover. If a farmer purchases a reaper which is warranted or is represented to be suitable for the harvest of his grain and it proves to be defective, his recovery of damages is ordinarily limited to the difference between the machine had it been as warranted and its value with the defect of which complaint is made. The fact that, by reason of the failure of the machine to work as represented, the purchaser's grain has been lost or that he has thereby been put to expense in the purchase of other machines or in the employment of additional help affords no ground for the assessment of damages. The loss so sustained may be traced to the failure of the machine to fill the warranty of the seller, but it is universally regarded as too remote to sustain a recovery against the warrantor. The damages which plaintiffs here claim are not less remote than those suggested in the foregoing illustration.

It follows from what we have said that the conclusions announced by the trial court are correct and its decree will upon both appeals be—*Affirmed.*

DEEMER, C. J., EVANS and PRESTON, JJ., concur.