**Wayne JACKSON, Plaintiff,**

v.

**AMERICAN YORKSHIRE CLUB, Defendant.**

**Civ. No. 69–C–2020–C.**

United States District Court,
N. D. Iowa, C. D.
June 18, 1971.

Thomas L. McCullough, Sac City, Iowa, and M. Gene Blackburn, Maxwell, Iowa, for plaintiff.

Whitley M. Hemingway, Webster City, Iowa, for defendant.

## MEMORANDUM AND ORDER

HANSON, Chief Judge.

This cause was tried to the Court without a jury. Jurisdiction is predicated and accepted by reason of diversity of citizenship and the requisite jurisdictional amount.

To facilitate an understanding of the issues in this controversy, the Court believes it is helpful to set forth some of the salient facts and the respective contentions of the opposing parties.

Plaintiff, Wayne Jackson, a resident of Calhoun County, Iowa, is a farmer engaged in the business of raising and selling purebred Yorkshire swine. Defendant, American Yorkshire Club, Inc., (AYC), is an organization incorporated

under the Indiana Not For Profit Corporation statute. Defendant's corporate purpose is, as stated by its articles of incorporation:

The maintenance and publication of a record of the pedigrees of pure-bred Yorkshire swine owned in the United States, the preservation of purity of blood thereof by strict rules of registry, and the further introduction and improvement of such breed, the education and assistance of owners and breeders of such swine by dissemination of information and advice respecting such matters through publication of the Yorkshire Journal and similar publications.

One of the primary services rendered by the AYC to its members is the recordation of purebred Yorkshire swine and the issuing of registration papers evidencing that a particular hog is a purebred.[1] It is not disputed by either litigant that the success of a breeder and seller of purebred Yorkshire swine is dependent upon securing purebred registration papers for these animals. And since the AYC is the sole registry in the United States for purebred Yorkshires, membership in the AYC is necessary and vital to a profitable purebred hog breeding program. Plaintiff Wayne Jackson joined the AYC in 1967.

The crux of this law suit is plaintiff's suspension from membership and potential expulsion from the AYC for the alleged reason that one or more of plaintiff's hogs which were registered as purebred Yorkshires were in fact non-purebreds or cross-breeds. The suspension, which occurred on June 27, 1969, provided that plaintiff, d/b/a Crow's Yorkshire Farm, was suspended from membership and prohibited from registering any swine until certain conditions were met which were designed to correct the alleged false registration. The notice of suspension further provided that unless Wayne Jackson complied with these requests by December 1, 1969, his membership would be subject to termination.

On July 7, 1969, plaintiff commenced suit in the Calhoun County District Court in Iowa against the AYC. This suit was ultimately removed to this federal court. Plaintiff alleged in his Complaint that the AYC had acted tortiously as well as illegally in claiming certain of his hogs were not purebreds, in suspending him from membership and in refusing to register any more of plaintiff's swine until he complied with the terms of his suspension.

Subsequent to the commencement of this law suit, but prior to trial, the AYC initiated expulsion or termination procedures against plaintiff which this Court, upon motion, enjoined until the final determination of the pending law suit.

This cause was tried to the Court on a purely factual issue—whether certain of plaintiff's swine were or were not purebred Yorkshires. However, at this stage of the proceeding, it is incumbent upon the Court to ascertain whether this is the proper forum for resolution of such an issue. Thus, even though federal jurisdiction is present, the Court's concern is with its scope of review in this particular case.

The American Yorkshire Club is properly classified under the generic term of an incorporated association or club. There is a substantial body of law in respect to such organizations and, in particular, the matter of suspension or expulsion of members and the attendant scope of judicial review.

■ As a general rule, an organization like the AYC has the right of suspension and expulsion if this power is

---

1. The importance of such institutions was recognized by the Iowa Supreme Court in Howard v. National French Draft Horse Ass'n, 169 Iowa 719, 151 N.W. 1056 (1915):

A certificate of registry in a herd book of recognized authority is a proclamation to the world. It is intended to be passed to each successive purchaser of the registered animal giving to it a character, reputation, and substantial value which it would not have except for its admission to registry.

reflected in either the articles of incorporation or the by-laws. The grounds for which a member may be suspended or expelled are those expressly stated in either the charter or the by-laws or acts which violate the very precept for which the organization was founded.[2]

The articles of incorporation of the AYC (Defendant's Exhibit Z) do not specifically provide for suspension or expulsion of members but do state that the corporation shall possess those powers properly within the general scope of the corporation's business or incident thereto or necessary or convenient in the accomplishment of its corporate objects. The articles further provide that defendant corporation shall have the power to regulate and conduct the affairs of the corporation.

However, the by-laws of defendant corporation (Plaintiff's Exhibit 11) do provide, *inter alia*, the following: (1) That members comply with the By-Laws and Rules of Registry (Article 1, section 1) of the AYC; (2) That membership may be terminated at any time by the Board of Directors in the manner provided in the by-laws for violation of the by-laws or the Rules of Registry or for any other conduct deemed by the Board of Directors to be prejudicial to the best interests of the corporation (Article 1, section 1); (3) That memberships may be withdrawn at any time by the board of directors and terminated in the manner provided by the by-laws (Article 1, section 3).

Furthermore, Section 8 of Article 1 of the by-laws states:

Section 8. The membership of any person or corporation may be terminated at any Annual Meeting of the Board of Directors for conduct by such member in violation of the By-Laws or Rules of Registry of this corporation. The decision of the Board of Directors shall be made after a complaint in writing designating the charges against such member shall be furnished to him (it) and after such member has had an opportunity to be heard, and such decision shall be final and conclusive and the member whose membership is so terminated shall have no further rights in law or equity in or against this corporation, its officers, directors, or members. Such member's name shall be removed from the records of the corporation and the certificate or certificates evidencing such membership cancelled. Failure or refusal to surrender the certificate or certificates evidencing the membership so cancelled shall not continue in the holder thereof any rights of membership subsequent to the decision of the Board of Directors.

Thus, in respect to expulsion or termination of membership in the AYC, the corporate by-laws definitely and clearly provide the essential and basic procedures such as a hearing incidental to a valid expulsion. See Berrien v. Politzer, 83 U.S.App.D.C. 23, 165 F.2d 21 (1947); Schroeder v. Meridian Improvement Club, 36 Wash.2d 925, 221 P.2d 544; Werner v. Intern. Ass'n of Mach., 11 Ill.App.2d 258, 137 N.E.2d 100; Annotation, 20 A.L.R.2d 344 *et seq.*

In addition to these well-recognized precepts concerning the respective rights of both the organization and its members in respect to suspension and expulsion, there is also a comparable body of law touching upon the court's interference or intervention in controversies where the association is seeking to suspend or expel one of its members.

This applicable body of law can be distilled into one sentence. A court's scope of review is severely limited in cases wherein members have been either suspended or expelled from their organizations. A clear and concise statement in respect to the permissible scope of judicial review in matters such as the instant case is found in 6 Am.Jur.2d, As-

---

2. The plaintiff concedes in his trial brief that false registration and cross-breeding would be acts justifying suspension and expulsion from defendant club.

sociations and Clubs, Section 37, wherein it is stated:

> With regard to associations, societies, and clubs generally, the trial or hearing before the tribunal or officers of the organization is judicial or quasi-judicial in nature, and a court will not retry the case upon the facts or determine, as a matter of its own judgment, whether the members should have been suspended or expelled, but will limit its interference to certain other grounds. In such cases the courts never interfere except to ascertain whether or not the proceeding was pursuant to the rules and laws of the organization, whether or not the proceeding was in good faith, and whether or not there was anything in the proceeding in violation of the law of the land. If it is found that the proceeding was had fairly, in good faith, and pursuant to the laws of the organization, and that there was nothing in it in violation of the law of the land, the decision is conclusive. In other words, a member of an association, society, or club, who is suspended or expelled by the tribunal vested with authority in this respect, pursuant to a fair hearing in which he has been given an opportunity to appear and defend himself, conducted in accordance with the procedure established by the constitution or by-laws of the organization, has no recourse to the courts.

> On the other hand, the expulsion or suspension of a member of a voluntary association, society, or club is not conclusive upon the civil courts if the organization, or its tribunal, acted without or exceeded its jurisdiction or powers; or if the disciplinary action was unwarranted or was based on insufficient grounds under the laws of the organization. Nor will the courts hesitate to interfere where the proceedings have not been conducted in accordance with the organization's own rules of procedure, or have been carried on contrary to the principles of natural justice, as where the accused member is given no proper notice of the charges and hearing and no opportunity to appear and defend himself before the organization tribunal, or is denied a fair hearing or trial, or where the expulsion is voted maliciously or in bad faith and not actually for the cause designated in the charge brought against the member.

This Court will not therefore determine whether a certain pig is in fact a purebred. This Court's only function in this law suit is to review the actions taken by the AYC to date against the plaintiff to determine whether said actions were vested with the necessary legalities.

The relevant facts underlying this issue are the following: On June 16, 1969, Wilbur Plager, Secretary of the AYC visited plaintiff's farm for the alleged purpose of confronting Wayne Jackson with the accusation that Comanche, a boar in plaintiff's herd, was not a purebred York. There is substantial dispute in the evidence presented to the Court as to what did in fact transpire at this time. In any event, after leaving the Jackson farm, Plager wrote a letter dated June 24, 1969 to Roland "Pig" Paul with copy to John James, president of the AYC, in which Plager stated that he had asked Jackson to sell Comanche and that he hoped the matter could be quietly disposed of although it was necessary to advise the board of directors of the situation.

On June 27, 1969, a special meeting of the board of directors of the AYC adopted a resolution suspending plaintiff from all privileges of membership including the right to register any swine until such time as plaintiff satisfied all the purchasers of plaintiff's pigs which contained non-Yorkshire breeding. The resolution further provided that plaintiff had until December 1, 1969 to comply and in the event he failed to do so, a complaint to effect termination of his membership would be made which would be considered at the January 1970 annual meeting. (Plaintiff's Exhibit 12).

In a letter to plaintiff dated June 30, 1969 (Defendant's Exhibit B), defendant's president, John James, stated the following:

> In our discussion on the phone last night you mentioned a hearing before the board on this matter. I think this request should be made through the office of the Yorkshire Club and they in turn can poll the directors on the matter. In view of the fact that you substantiated to me that [or what] you told Secretary Plager that the Comanche Boar did indeed have Chester White Breeding in him I doubt if there is any need to give this evidence again to the board.

In a letter dated July 1, 1969, Secretary Plager advised plaintiff of the board's action (Defendant's Exhibit AA) and suggested methods plaintiff could pursue to comply with the board's resolution. Plager advised plaintiff that the simplest procedure would be to sell the complete herd and buy all new gilts to go with three boars.

On July 7, 1969, plaintiff commenced the instant law suit. On July 14, 1969, plaintiff and three board members of the AYC met but failed to reach any settlement. In August and September 1969 notice of the suspension and law suit were published in the AYC Journal.

In December 1969, the AYC commenced termination of membership proceedings against plaintiff by the filing of a formal complaint and service of notice as provided by the corporate by-laws. This proceeding was enjoined from going forward pending final disposition of this cause.

■ It is patently obvious that defendant AYC did not act pursuant to its own by-laws in suspending plaintiff from membership. Defendant AYC concedes that there is no provision in either its articles or by-laws which permits it to suspend a member as opposed to termination of membership. Irrespective of this total silence concerning suspension in the internal laws of the AYC, a matter which is suspect in itself insofar as concerns legality, the suspension of Wayne Jackson was a summary suspension. There was no notice to Wayne Jackson. He was never given any hearing prior to suspension. None of the necessary procedures incidental to a valid suspension, even if it is assumed there could be a valid suspension under these facts, were followed. In short, the Court finds that the action of the AYC in suspending Wayne Jackson from membership is unlawful and therefore void. See Van Valkenburgh v. Chemists' Club, Sup., 38 N.Y.S.2d 228 (1942); Stein v. Marks, 44 Misc. 140, 89 N.Y.S. 921 (1904).

■ Defendant has attempted to circumvent this result by arguing that the absence of any rules of the AYC providing for suspension after notice and fair hearing is vitiated by Wayne Jackson's failure to request any such hearing. Thus, defendant seeks to put the burden on its members to see that the necessary legalities are followed. Such a procedure smacks of unconscionability. Furthermore, such an argument is fallacious considering that the suspension was handed down before plaintiff apparently even knew that such action was being contemplated.

■ Defendant AYC also contends that Wayne Jackson should be barred from raising the illegality of the suspension by reason of his "unclean hands" in registering cross-breeds as purebred Yorkshires. This is a classic example of getting the cart before the horse or more appropriately perhaps in this case, locking the pig pen after the hog has escaped. The very issue which is basic to this controversy is whether plaintiff in fact has registered non-purebred swine. Defendant AYC cannot bootstrap itself in this manner out of its unlawful suspension of plaintiff.

■ Defendant AYC also urges in support of the summary suspension that the ends justified the means. The AYC contends that summary suspension is crucial for the protection of third parties, namely those prospective and inno-

634

cent purchasers of Yorkshire swine who rely upon the AYC's registration as certification of the hogs' purity. The argument is that unless summary suspension is permitted, the AYC would be liable to these purchasers. This argument is also specious, since the AYC could have protected potential purchasers as well as given notice to all interested parties by filing a complaint against plaintiff pursuant to its own by-laws. The filing of the complaint conceivably would have had the same effect as a formal suspension. Certainly, until the annual meeting plaintiff would have been subjected to the same economic pressures and other consequences allegedly suffered under the suspension. Furthermore, prospective buyers would be wary of purchasing plaintiff's hogs if a complaint which raised the question of the purity of plaintiff's hogs had been filed. In fact, all interested parties would then have had notice that plaintiff's pigs were being investigated and they would then buy at their own risk. Thus, the Court finds no merit in defendant's argument that summary suspension was the only possible effective action that could have been taken under the premises.

■ However, a declaration by this Court that the AYC unlawfully suspended plaintiff is not synonymous with awarding plaintiff all the relief he has requested. The Court has already stated that there did exist an effective and legal method by which the AYC could have achieved their purpose in protecting the registry. The only relief plaintiff is entitled to at this time is that relief which will compensate for the effects of the AYC's illegal suspension which would not have been suffered by plaintiff if a complaint had been filed on June 27, 1969 rather than suspension imposed. Certainly the suspension is void as against plaintiff. This is not to say that plaintiff is entitled to register all his swine as he desires. No one doubts the AYC's power to refuse to register any hog not a purebred Yorkshire. However, the AYC has apparently refused to register any of plaintiff's hogs even though their pedigree is unquestioned. Since plaintiff is still a member of the AYC, denial of registration on hogs not disputed to be other than pure Yorks is arbitrary and capricious action and will not be permitted. Thus, defendant AYC will be enjoined from refusing to register plaintiff's swine which are admittedly purebreds while he is still a member of that association.

The Court believes this is the extent of the relief it can afford plaintiff. The evidence is insufficient to award any money damages for the AYC's refusal to register swine which are, without doubt, purebred Yorks. It may very well be that all the swine owned by plaintiff are suspicioned by the AYC and thus that none will be registered. In any event, any such award would be speculation on the present record. Neither will the Court allow money damages for all the other economic effects allegedly suffered by plaintiff by reason of the suspension. The Court explained in an earlier part of this Memorandum and Order that plaintiff was only entitled to relief from those consequences which he would not have suffered if termination of membership rather than suspension had been pursued. Plaintiff would have suffered the same hardships in attempting to sell his hogs under either the suspension or initiation of termination proceedings. Furthermore, the evidence as to this element of damage is likewise too speculative to permit any pecuniary recovery.

Suffice it to say that if the AYC believes suspension with conditions is essential to the proper and desired functioning of the organization, then the by-laws should be amended. But the Court will not allow *ad hoc* and *ex parte* additions to the by-laws in the manner herein attempted. All the Court has done today is to compel the AYC to follow its own rules and regulations.

The next question is where this law suit goes from here. The Court believes it is at an end. The Court has reviewed everything permissible pursuant to its

limited scope of review. Thus, it would appear that the temporary restraining order preventing the AYC from acting on the termination of Wayne Jackson's membership must now be dissolved and said proceeding allowed to go forward.

■ It must be apparent at this point that the Court is not going to pass on the ultimate question of whether certain swine in plaintiff's herd are in fact pure-bred Yorks. This Court is not some kind of super Yorkshire board whose task it is to make such a decision. That determination and responsibility rests with the board of directors of the AYC. Their decision, if pursuant to the certain legal standards, will be conclusive and the courts will not intervene.[3] As stated in Stevenson v. Holstein-Friesian Association, 30 F.2d 625, 627 (2nd Cir. 1929):

> Where an association sets up a private tribunal to determine whether a member has forfeited his rights of membership by the violation of some rule of the corporation, judicial review is of limited scope. In general, it may be said that courts will interfere to keep such a tribunal within its jurisdiction, as prescribed by the rules of the association, and will inquire whether the action taken was in bad faith, or in violation of the laws of the land, but will not investigate the merits of the tribunal's decision.

Also see 18 Am.Jur.2d., Corporations, Section 477.

Obviously the Court cannot determine at this time in respect to termination of plaintiff's membership whether plaintiff was afforded a fair hearing or whether the AYC board of directors have acted in bad faith or arbitrarily or capriciously or in violation of the law until such time as they have so acted. Again the Court must reiterate that its scope of review even at such later time as final action has been taken by the AYC in re-

spect to terminating plaintiff's membership would be limited in scope and in no event would the Court substitute its judgment for that of the AYC on the merits of the case. The Court's only concern would be with the fairness of the hearing itself if such matter is again raised to the Court. Thus, even though during the trial of this cause the Court heard a lot of evidence pertaining to the purity of plaintiff's hogs which in retrospect was irrelevant to the Court's proper function in the case, such evidence will not be irrelevant to the question of plaintiff's termination. The Court is therefore not overly concerned that the evidence will not be fairly presented to the board. The Court is concerned, however, that the board's decision may be influenced more by the feelings of certain officers of the AYC who may be seeking some sort of personal vindication in this matter rather than the directors maintaining an open mind, listening to all the evidence and then rendering an informed and intelligent decision based on said evidence.

The Court has had the benefit of hearing most of the evidence. Much of it is in conflict. Much of it is based on hearsay. Most all of it is inconclusive. If the Court were in the position of being the final decider on the question of whether Wayne Jackson's swine were or were not purebred Yorkshires based on this evidence, the accuracy of any pronouncement would, in the last analysis, be not much better than the toss of a coin.

The Court does not have to make that decision however. The board of directors of the AYC have that responsibility. They must decide whether the evidence presented is of that quality and quantity which would permit them to expel a member whose livelihood as a Yorkshire breeder is dependent upon membership in the AYC. The directors must, of course, also consider the inter-

---

3. A different rule exists in cases involving incorporated *professional* associations and the courts will pass upon the sufficiency of the accusation by which a member has been suspended or expelled. *See* 18 Am.Jur.2d., Corporations, Section 477 and cases cited therein.

ests of the AYC. Theirs will probably not be an easy decision. The Court's only directive in this regard is that any decision must be rendered in good faith and not in malice which simply means that Wayne Jackson must be accorded a fair hearing and fair decision. Wayne Jackson is entitled to nothing more. The law requires nothing more. Who knows? Even Comanche, with all his vividly described attributes, may survive the aspersions cast in this controversy.

Accordingly, judgment shall be entered providing for the following: (1) Declaring plaintiff's suspension unlawful and void; (2) Enjoining the defendant American Yorkshire Club from refusing to register any swine owned by plaintiff which are not disputed to be other than purebred Yorkshires; (3) Dismissing the remainder of plaintiff's complaint without prejudice; (4) Dissolving the temporary restraining order and allowing termination proceedings to go forward; and (5) Requiring defendant to bear the costs of this action.

It is ordered that the foregoing shall constitute the Findings of Fact, Conclusions of Law, and Order for Judgment pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.