Edgar TERRELL, Appellant
(Plaintiff Below),

v.

PALOMINO HORSE BREEDERS OF AMERICA, a Corporation Duly Organized Under the Laws of the State of Texas and known as PHBA; J. Benham Steward, Jr., President, PHBA; Louis Hufnagel, 1st Vice President, PHBA; Paul D. Frank, 5th Vice President, PHBA; Melba Lee Spivey, Executive Secretary, PHBA; Joseph D. Geeslin, Jr., Attorney for the Executive Committee, PHBA, Appellees (Defendants Below).

No. 2-878-A-287.

Court of Appeals of Indiana,
Second District.

Dec. 31, 1980.

George F. Stevens, Kenneth H. Lukenbill, Jr. and Roy D. Burbrink, Stevens, Wampler, Travis & Fortin, Plymouth, Jesse A. Brown,

Brown, Brown & Rakestraw, Rochester, for appellant.

Joseph D. Geeslin, Jr., Indianapolis, for appellees.

SULLIVAN, Judge.

Plaintiff Edgar Terrell appeals from a trial court decision upholding a one-year suspension from the Palomino Horse Breeders of America (PHBA). He asserts that the trial court erred in:

1) Failing to award him damages;

2) Failing to consider evidence other than that presented at the association hearing;

3) Determining that he had been accorded due process by the organization; and

4) Determining that the suspension was reasonable.

It is appellant's position, not disputed by appellees, that one must be a member of PHBA in good standing in order to successfully conduct business related to the breeding, selling, or showing of Palominos. Terrell joined PHBA in 1955. Since that time he has bred, raised, trained, showed, and sold Palominos.

In a letter dated December 26, 1973, PHBA informed Plaintiff that, after notice and a hearing, he had been found to have violated the Association's rule against approaching a judge "while judging or about to judge." The organization imposed the following sanction:

"[Y]ou will be prohibited for the period January 1, 1974 through December 31, 1974, from (1) showing any Palomino horse in Palomino Horse Breeders of America approved shows; (2) sponsoring, promoting and/or participating in any Palomino Horse Breeders of America approved show; (3) allowing any other person to show a horse registered in your name at a Palomino Horse Breeders of America approved show; (4) judging any

show which is approved by Palomino Horse Breeders of America . . . ." (R. 15)

The hearing to which the letter referred had been held, but had been conducted in regard to alleged rule violations by the judge, not Terrell. Further, Terrell had not been informed of any charge against him until he received the letter. He so notified PHBA in his request for reconsideration.

The PHBA then granted the request for reconsideration and scheduled a hearing for March 30, 1974, but did not issue an interim reinstatement. By letter dated March 14, 1974, Terrell was informed that he had been charged with failing to personally inspect two horses that he had certified for registration in 1971 and 1972. Those charges were also to be considered during the March 30 hearing. The hearing was subsequently cancelled. Thereafter, Terrell sought and received, from the trial court, a temporary restraining order and, later, a preliminary injunction.

Eventually, at court direction, PHBA held a hearing on June 7, 1974. At that time, the Executive Committee dismissed one of the failure to inspect charges and unanimously found Terrell guilty on the two other charges. For the remaining failure to inspect violation, the Committee imposed a one-year suspension containing the same prohibitions as the original sanction. A three month, but otherwise identical, suspension was imposed for the approaching a judge infraction. The PHBA membership upheld the Committee's action.[1] The trial court, sustained PHBA with respect to the failure to inspect violation, but overruled the organization on the approaching a judge charge.

I.

The internal rules of PHBA provided:

---

1. Following the evidentiary hearing before the Executive Committee, the matter was submitted to the full membership of the Association for ratification or rejection of the decision of the Executive Committee. At that proceed-ing no evidence was submitted. Counsel for the Association and Terrell's attorney, as well as Terrell himself, addressed the full membership, following which the two respective attorneys answered questions from the floor.

"Whenever anyone shall be accused of any violation, he shall be given not less than fifteen (15) days of notice of a time and place for hearing such accusation by the Executive Committee or by an appropriate committee, at which time and place he shall have an opportunity, in person or by counsel, to be heard and to present evidence in his own behalf and to hear and refute evidence offered against him."

As indicated above, Terrell did not receive proper notice or an opportunity to be heard prior to the first suspension. For that reason, Terrell sought damages of $7,500 for the suspension from January 1, 1974 to April 26, 1974.

■ Courts will generally refuse to interfere in the internal affairs of a voluntary association. *State ex rel. Givens v. Superior Court of Marion County* (1954) 233 Ind. 235, 238, 117 N.E.2d 553, 555; 6 *Am.Jur.2d* Associations and Clubs § 27 (1963). In such cases, courts will review an organization's action to determine whether the complaining member was accorded due process in the sense that he must have been informed of the charges against him and allowed adequate opportunity to prepare and present a defense. *See McCreery Angus Farms v. American Angus Association* (S.D. Ill.1974) 379 F.Supp. 1008, 1019, aff'd, (7th Cir.) 506 F.2d 1404. If an association's rules provide such a procedure, those rules must be followed. *See Jackson v. American Yorkshire Club*, (N.D.Iowa 1971) 340 F.Supp. 628, 632.

■ PHBA's rule satisfies the procedural requirements. The organization's ac-

tion, however, was contrary to its own rule. For that reason, Terrell's original suspension was invalid.[2] An invalid suspension may result in monetary damages if such damages are proved. *See Jackson v. American Yorkshire Club, supra*, 340 F.Supp. 628; *Madden v. Atkins* (1958) 4 N.Y.2d 283, 151 N.E.2d 73, 174 N.Y.S.2d 633. Further, in exception to the general rule, it is not necessary that administrative remedies within the association be exhausted before a trial court may consider a request for damages. 6 Am.Jur.2d *Associations and Clubs* § 42 (1963). Here, however, the trial court properly excluded the evidence tendered by Terrell because it was too remote and speculative to support a claim for damages. During the trial court proceedings Terrell sought to have the court consider evidence in addition to that adduced during the association proceedings. He did so by way of an "offer to prove", a part of which was his affidavit stating that he was "primarily engaged in the buying, selling, caring for, breeding, raising and training of horses and the sale of horse trailers" and "that this has included *primarily* registered palomino and quarter horses". (Emphasis supplied.)

Terrell offered

"to introduce in evidence his business records, both as to income and disbursements, his tax records and will show the general nature of his activity and the profit he has made and the loss he has suffered by reason of the ... acts of the defendant."

The affidavit listed Terrell's income as follows:

---

2. In his brief Terrell suggests that the suspension was also invalid because the trial court found that he had not approached a judge while judging or about to judge. We feel compelled to state that the trial court exceeded the proper scope of review in that finding. Courts generally have held that judicial review of an association's action is limited to enforcement of the organization's own rules or basic due process. *See McCreery Angus Farms v. American Angus Ass'n., supra*, 379 F.Supp. 1008, 1018 19; *Jackson v. American Yorkshire Club, supra*, 340 F.Supp. 628, 632; Annot., 72 A.L.R.3d 422 § 4 (1976). With respect to questions of

fact, we believe that the scope of review should be the same as that of administrative agency actions, *i. e.*, the trial court cannot weigh the evidence and must uphold the organization's finding if it is supported by any substantial evidence. *See Indiana Educ. Employment Relations Bd. v. Board of School Trustees* (3d Dist.1978) Ind.App., 377 N.E.2d 414, 416, *cf.*, *Madden v. Atkins* (1958) 4 N.Y.2d 283, 297, 151 N.E.2d 73, 80, 174 N.Y.S.2d 633, 644 (Desmond, J., concurring) (stating that an association's decision on the merits must be upheld unless "contrary to natural justice, purely arbitrary and one that no honest mind could adopt.").

| 1971 | Horses, Gross | 28,498.50 | Trailers, Gross | 34,144.03 |
| 1972 | Horses | 29,140.93 | Trailers | 63,504.53 |
| 1973 | Horses | 18,839,00 | Trailers | 22,723.95 |
| 1974 | Horses | 23,055.58 | Trailers | 26.840.69 |

Terrell also submitted his attorney's affidavit which stated that four witnesses would testify that Terrell had suffered financial harm but that they would not be able to place a dollar value thereon.

■ A damage award must be determinable in some manner other than by mere conjecture or speculation. *Jay Clutter Custom Digging v. English* (3d Dist.1979) Ind. App., 393 N.E.2d 230, 233. The multitude of variables in Terrell's offer, *i. e.*, other businesses engaged in, income from transactions involving other breeds of horses included in the total income for a given year, render the evidence too illusory to warrant an award of money damages.

Although the trial court did not err in excluding Terrell's additional evidence, there is no question that his first suspension was procedurally invalid. In such cases it is within a court's power to remedy the harm occasioned by ordering the reinstatement of the suspended member. 6 Am.Jur.2d *Associations and Clubs* § 41 (1963). Since Terrell's second suspension is valid, the practical equivalent of reinstatement is for him to receive credit, as discussed in section IV *infra*, for the period he was invalidly suspended.

## II.

■ In addition to the damage evidence discussed above, the trial court refused to consider a deposition of Jim Meyers, the owner of the horse Terrell allegedly failed to inspect, and an affidavit of Jackie Eiler, secretary–treasurer of the Palomino Horse Exhibitors of Indiana.

At the association hearing, Meyers testified on direct examination that Terrell had given him the registration form and that he had mailed the form to the national association. On cross examination, Meyers admitted that Terrell mailed him the form and that he returned it to Terrell. The latter statement conforms to the deposition and to the Eiler affidavit which stated that she received the registration from Terrell and mailed it to the national organization.

As with the decision of an administrative agency, in reviewing an organization's determination, generally the trial court may not conduct a trial de novo or consider evidence not before the association. *See Indiana State Highway Commission v. Zehner* (2d Dist.1977) Ind.App., 366 N.E.2d 697, 702. Further, the offered evidence was merely cumulative of the cross examination testimony. A trial court does not abuse its discretion in excluding cumulative evidence. *See Waugaman v. Gary Methodist Hospital of Gary, Inc.* (2d Dist.1972) 151 Ind.App. 279, 279 N.E.2d 240.

The trial court did not err in refusing to consider the Meyers deposition and the Eiler affidavit.

## III.

Terrell asserts that he was denied a fair hearing. He points to the procedure surrounding the invalid suspension, the addition of two other charges during the pendency of the original charge, and the postponement of an organizational hearing until injunctive relief was sought in court. In addition he asserts that PHBA failed to furnish him with copies of the charge, delayed in notifying him of his accuser, and did not require the accuser to testify. He also attacks the hearing before the Executive Committee in that the Committee considered the accuser's affidavit and unsworn statement, a Committee member stated that Terrell's attorney could not tell the Committee what it could do, and the PHBA attorney stated that the Committee con-

sidered evidence not included in the deposition. Finally, Terrell observes that the registration of the horse in question was not revoked.

■ As indicated above, the issuance of the original suspension was tainted by due process denial. But an association may "re–try" a member for violation of its rules even though the member was denied due process in the original action. *See Jackson v. American Yorkshire Club, supra* 340 F.Supp. 628; *Cohen v. Rosenberg* (1941) 262 A.D. 274, 27 N.Y.S.2d 834; *aff'd,* (1942) 287 N.Y. 800, 40 N.E.2d 1018. In *Jackson* the suit was brought to determine the validity of the original suspension. In stating that the association could again seek to discipline the member if it followed proper procedure, the court noted:

> "The Court is concerned, however, that the board's decision may be influenced more by the feelings of certain officers of the [organization] who may be seeking some sort of personal vindication in this matter rather than the directors maintaining an open mind, listening to all the evidence and then rendering an informed and intelligent decision based on said evidence." 340 F.Supp. at 635.

The court concluded: "The Court's only directive in this regard is that any decision must be rendered in good faith and not in malice which simply means that [the member] must be accorded a fair hearing and fair decision." *Id.* at 636. We share the concerns of the New York court and have closely scrutinized the subsequent actions of PHBA with a view toward whether the organization acted in good faith and rendered a fair decision after a fair hearing.

PHBA was informed of the two inspection charges by letter dated January 1, 1974. The letter notifying Terrell was dated March 14, 1974. He had previously been notified of the approaching a judge charge by the suspension letter and by another letter dated February 28, 1974. Thus, Terrell had notice of all the charges within a reasonable time. Further, due to the time the organization was informed of the failure to inspect charges, the addition of those charges does not indicate bad faith.

The identity of Terrell's accuser had no effect on Terrell's ability to prepare or present a defense. The association had no means of compelling the accuser's attendance at the hearing. *See Silver v. Castle Memorial Hospital* (1972) 53 Haw. 475, 497 P.2d 564, *cert. denied,* 409 U.S. 1048, 93 S.Ct. 517, 34 L.Ed.2d 500, *rehearing denied,* (1973) 409 U.S. 1131, 93 S.Ct. 936, 35 L.Ed.2d 264. The Executive Committee's dismissal of one of the failure to inspect charges, because the owner of that horse did not appear, would seem to demonstrate that the organization did not consider the accuser's statement an affidavit.

The Committee member's statement that Terrell's attorney could not tell the Committee what it could do was cured by the PHBA attorney's explanation that such action was necessary to preserve any error for review. Meyer's testimony at the hearing was far more detailed than his deposition. Thus, the statement that the Committee considered matters outside the deposition is no indication of an unfair decision.

The effect of the failure to inspect a horse is sufficiently dangerous to the basic purposes of the organization that an offender merits punishment regardless of whether the horse is, in fact, qualified to be registered as a Palomino. Thus, that the registration was not revoked is of no consequence.

The only remaining indicators of possible bad faith are the failure to lift the original suspension and the failure to reschedule a hearing prior to court intervention. While we do not approve of these practices, we are not able to find in them a sufficient indication of bad faith to invalidate the association's proceedings.

## IV.

■ Plaintiff asserts that the penalty imposed by PHBA is unreasonable. We note that if the sanction is provided in the organization's constitution, by–laws, or rules, it is necessarily permissible. *See Jackson v. American Yorkshire Club, supra,*

340 F.Supp. 628. The record, however, does not indicate that the constitution, by laws or rules provided any specific sanctions applicable either to infractions generally or to particular violations. Due to such absence in the record, we must assume that the organization has no specific sanctions.

The next question is whether a voluntary association may formulate disciplinary sanctions after a rule has been broken. Voluntary associations clearly have the right of self–preservation. Implicit in that right is the power of an organization, at a minimum, to suspend or expel members who violate that organization's rules or commit acts which threaten the essential purpose for which the association was formed. *Compare Jackson v. American Yorkshire Club, supra* (holding that the club could not suspend a member because the rules provided only for termination of membership) *with Allen v. Chicago Undertakers' Association* (1908) 232 Ill. 458, 83 N.E. 952 (holding that the association had the inherent power to expel a member). We cannot say that the penalty was unreasonable.

There is no indication, however, that PHBA intended to suspend Terrell for more than one year. He was suspended, albeit invalidly, from January 1, 1974, to April 25, 1974. Therefore, in completing the suspension, Terrell should be credited with that period. Accordingly we modify the judgment of the trial court to reflect the appropriate credit. As so modified, the judgment is affirmed.

BUCHANAN, C. J., and SHIELDS, J., concur.