Stephen C. HARTUNG, Appellant,

v.

AUDUBON COUNTRY CLUB, INCORPORATED, Appellee.

No. 89–CA–0434–S.

Court of Appeals of Kentucky.

Jan. 19, 1990.

Discretionary Review Denied by Supreme Court April 18, 1990.

Robert G. Stallings, Peter L. Ostermiller, Stallings & Stallings, Louisville, for appellant.

Frank P. Doheny, Jr., Lisa Patrick Leet, Woodward, Hobson & Fulton, Louisville, for appellee.

Before CLAYTON, MILLER and WEST, JJ.

MILLER, Judge.

Stephen C. Hartung brings this appeal from a summary judgment of the Jefferson Circuit Court upholding his expulsion from the appellee, Audubon Country Club, Incorporated (hereinafter referred to as "Audubon" or "the club".)

Audubon is a nonstock, nonprofit corporation, organized under Kentucky Revised Statutes (KRS) 273.161 *et seq.* Its operation is governed by the statutes under which it is organized, its articles of incorporation, and its bylaws. The statutes permit Audubon to exist for social and recreational purposes and to govern its affairs through elected or appointed officers governed by certain bylaws. The statutes authorize Audubon to have members if it so chooses and to designate the rights of members via the articles of incorporation or the bylaws. The articles provide for a board of directors with power to enact bylaws and to make and enforce all necessary regulations for the proper conduct of the affairs and business of the club. The bylaws authorize directors "to prescribe different classes of membership and define the rights, privileges, and duties of each class." The bylaws also authorize the directors to "discipline, fine, suspend, or expel" a member who has "commit[ted] an act which in the opinion of the Board of Directors is unworthy of a gentleman or lady, or which tends to discredit or degrade him or her or to reflect injuriously on the character and standing of the Club ... after giving such member notice of the proposed action and opportunity to be heard." The bylaws also provide that "[a]ll questions of construction of the By-Laws shall be determined by the Board of Directors, whose decision shall be final."

On March 4, 1988, the board of directors directed the following letter to Hartung:

At the February meeting of the Board of Directors of Audubon Country Club, the Board was informed that you had plead guilty in Federal District Court to two felony charges involving conspiracy to possess with intent to distribute marijuana and cocaine, and possession with intent to distribute cocaine. It is the finding and opinion of the Board of Directors that the conduct that led to your guilty plea is unworthy of a member of Audubon Country Club, tends to discredit and degrade yourself, and reflects injuriously on the character and standing of Audubon Country Club.

Based upon such finding, you are hereby formally notified that pursuant to the power granted to the Board of Directors of Audubon Country Club under Article VI(J) of the By-laws, the Board of Directors, by unanimous decision at the February 23, 1988 meeting, proposes to expel you from membership of Audubon Country Club.

Pursuant to the provisions of Article VI(J) of the By-laws, you are herewith notified of the proposed action of the Board of Directors of Audubon County [sic] Club and in the event that you desire to be heard on this matter, you may appear before the Board at its next regularly scheduled meeting on Tuesday, March 15, 1988, at 6 p.m. Final action with respect to this matter will be taken by the Board of Directors at the regularly scheduled meeting on March 15, 1988.

On March 15, 1988, Hartung attended the director's meeting and addressed the members. Notwithstanding his plea, the directors caused his dismissal from the club for reasons stated in the letter of March 4th. On May 2, 1988, he filed subject action contending a denial of due process and prayed reinstatement or alternatively for recovery of expenditures in connection with his membership.

 As we view the law, a voluntary private club has an unfettered right to chose its own members. Neither due process nor concepts of fundamental fairness require that one be bound to associate with others against his will. *See The Everglades Protective Syndicate, Inc. v. Makinney*, 391 So.2d 262 (Fla.Dist.Ct.App. 1980). Membership creates an at-will relationship between the participating member and the association. The rules and regulations of the club expressed in the charter and bylaws govern membership, and the club is the final arbiter of all matters relating to the club-member relationship. Judicial review is limited to enforcement of the organization's own rules. *See Terrell v. Palomino Horse Breeders of American*, 414 N.E.2d 332 (Ind.Ct.App.1980).

 In the case *sub judice*, Hartung was offered all benefit of the rules governing his relationship with the club. He contends the rules were violated, resulting in loss of due process[1] in that the March 4th letter demonstrates a predetermined decision to dismiss him before hearing. We think his argument is without merit. The fact is, the bylaws provide only for notice and opportunity to be heard before actual

termination of membership. Clearly, Hartung was afforded full benefit of this procedure.

On review of the record, we find no departure from the rules governing membership in the club of which Hartung may validly complain.

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

All concur.

---

1. Many cases dealing with social club expulsion talk in terms of due process. *Cf. Bay v. Anderson Hills, Inc.*, 19 Ohio App.3d 136, 483 N.E.2d 491 (1984). In the traditional sense, due process is protection against state action. We fail to see its relevance in disputes between a voluntary private social club and its members. In *Kirk v. Jefferson County Medical Society*, Ky. App., 577 S.W.2d 419 (1978), our Court talked in terms of due process when considering expulsion from a medical society—not exactly a voluntary private social club. Nevertheless, expulsion was upheld based upon substantial compliance with the society's constitution and bylaws. Ultimately, the rules of a private social club, however unfair, govern the relationship with its

members. We recognize, however, the United States Supreme Court has upheld the application of a New York City antidiscrimination law where a club regularly received payment from nonmembers. *See New York State Club Ass'n, Inc. v. City of New York*, 487 U.S. 1, 108 S.Ct. 2225, 101 L.Ed.2d 1 (1988). As aptly stated by Justice O'Connor in her concurring opinion, "our cases also recognize an 'association's First Amendment right to control its membership,' acknowledging, of course, that the strength of any such right varies with the nature of the organization." *Id.* at 108 S.Ct. 2237, quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 104 S.Ct. 3244, 3257, 82 L.Ed.2d 462 (1984).