**Miles H. ROBINSON, Plaintiff,**

v.

**George F. LULL et al., Defendants.**

**No. 55 C 1053.**

United States District Court
N. D. Illinois, E. D.

Oct. 18, 1956.

John F. Sembower, Chicago, Ill., for plaintiff.

Kirkland, Fleming, Green, Martin & Ellis, Chicago, Ill., Howard Ellis, A. Leslie Hodson, Max Wildman, Karl Nygren, C. Joseph Stetler, Chicago, Ill., of counsel, for defendant.

SULLIVAN, District Judge.

This is a controversy in the world of medicine. Plaintiff is a doctor; defendants are the American Medical Association ("A.M.A.") and certain individuals who were its officers during the relevant time: George F. Lull, its secretary and general manager; his assistant, Ernest B. Howard; Edward R. Cummiffee, chairman of its Judicial Council; John W. Cline, its president; and J. W. Holloway, Jr., head of its legal department and legal advisor to the Judicial Council. Defendants have moved to dismiss the amended complaint for failure to state a cause of action.

The amended complaint is in two counts, the first of which purports to state a cause of action under the antitrust laws, specifically sections 1 and 2 of the Sherman Act, 15 U.S.C.A. § 1, 2, and section 4 of the Clayton Act, 15 U.S.C.A. § 15. The crux of this Count is the charge that the defendants conspired to monopolize the function of supplying pre-paid (or "contract") medical and hospital services, that is, the giving of those services in return for a regular monthly payment. In truncated form, the allegations of Count I are that: Membership in the A.M.A. is a prerequisite to a successful medical practice, since it is required before a doctor may use hospitals for the treatment of his patients. In the years 1949 through 1952, plaintiff was a member of that organization, and was practicing his profession in Walla Walla, Washington. In 1949 or 1950 there was organized in that city "at the instigation of" the A.M.A., the Walla Walla Valley Medical Service Corporation ("Medical Bureau"), which proceeded to enter into contracts to supply pre-paid medical and hospital care. This Bureau is under the domination of the A.M.A. through duplication of membership and joint meetings; and it was organized by defendants as a means of monopolizing the field of contract medicine. Plaintiff disapproved of its formation and its method of operation, and wrote to the Walla Walla Valley Medical Society, a subsidiary of the A.M.A., protesting and giving his reasons for objecting. On May 22, 1951, in accordance with the terms of a conspiracy among the named defendants and others, plaintiff was expelled from the County Medical Society, State Medical Association, and the A.M.A., on a false charge, according to an illegal procedure, and without an opportunity to present his side of the story. Although he was re-instated as a member of the Judicial Council in 1952, both consideration of his appeal and publication of the favorable decision were delayed for several months. As a consequence of all this, plaintiff was unable to use hospital facilities, his practice in Walla Walla was ruined, and he was forced to attempt to re-instate himself in practice in Baltimore, Maryland, where he is now. Further, the defendants communicated the fact of plaintiff's expulsion to his father, who thereupon changed his will to plaintiff's disadvantage. Plaintiff asks actual

damages of $272,000, plus treble damages under the Sherman Act.

That a cause of action under the anti-trust laws is not stated is apparent. Those laws forbid "restraint" or "monopolizing" of "trade or commerce among the several States," Title 15 U.S.C.A. §§ 1 and 2. The gist of Count I is that the A.M.A. monopolized, or attempted to monopolize, the field of supplying medical and hospital services on a pre-paid basis. Assuming the truth of the very general allegations to this effect, there is nothing which could show a resulting damage to the plaintiff. A member of the public who observes a monopolistic practice of which he disapproves has no standing to rectify the matter by bringing suit. This is the function of the Attorney General. Cf. United States v. Oregon State Medical Society, 1951, 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978. The remedy available to a private person is given to "any person * * * *injured in his business or property by reason* of anything forbidden in the antitrust laws", Title 15 U.S.C.A. § 15.

Under this section it is evident that there must first exist a business or property of a kind capable of being injured by the violation alleged. Peller v. International Boxing Club, 7 Cir., 1955, 227 F.2d 593, 596; Sargent v. National Broadcasting Co., D.C.S.D.Cal. 1955, 136 F.Supp. 560; Conference of Studio Unions v. Loew's, Inc., 9 Cir., 1951, 193 F.2d 51, certiorari denied 1952, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687. In the allegations of the present complaint there is nothing from which it is possible to deduce how monopolization of the "contract medicine" business could have injured the plaintiff. He alleges that at Walla Walla he "developed a successful practice which emphasized certain basic measures against disease, particularly the use of diet, vitamins, and antibiotics". This has no relation to supplying pre-paid medicine; and there is no allegation that plaintiff was prepared to, attempted to, or even thought about entering this field. His "business" was

therefor not of a type capable of injury by its monopolization by any one.

The same result is reached in another way by pointing out that the plaintiff was not injured "by reason of" an anti-trust violation. His practice was injured by his expulsion from the Walla Walla Valley Society and by the delayed consideration of his appeal and the announcement of his reinstatement. It is not clear how these activities assisted or could have assisted defendants in their pursuit of a monopoly. The alleged violations were accordingly not the direct and proximate cause of the injury. Tepler v. Frick, 2 Cir., 1953, 204 F.2d 506; Virtue v. Creamery Package Mfg. Co., 1913, 227 U.S. 8, 38, 33 S.Ct. 202, 57 L. Ed. 393. Count I thus fails to state a cause of action under the anti-trust laws for the reason that there is no showing that plaintiff was injured in his business or property by acts of defendants forbidden by those laws.

An additional, and equally fatal defect is that there is no allegation showing any effect of the alleged monopoly on interstate commerce; and this is of course essential. Title 15 U.S.C.A. §§ 1 and 2; Polhemus v. American Medical Association, 10 Cir., 1949, 145 F.2d 357, 359. Particularly apt here is Spears Free Clinic & Hospital for Poor Children v. Cleere, 10 Cir., 1952, 197 F.2d 125, 126. Plaintiff was a chiropractic institution in Denver, Colorado, and defendants were the local Medical Society and various doctors who were its members. The complaint, attempting to state a cause of action under the anti-trust laws, alleged that defendants had conspired to prevent the operation of the plaintiff hospital, and that as a consequence fewer patients came to it from other states. In affirming the trial court's dismissal of the complaint, the court remarked that "The practice of the healing arts in Colorado, including chiropractic, is wholly local in character", and held that the alleged effect on interstate commerce was too remote and insubstantial to satisfy the requirements of the Sherman Act.

▪ Not even a remote effect on interstate commerce is alleged in the instant case. The "trade or commerce" affected was in Walla Walla, Washington, and all the events related occurred there. It is true that there are some allegations, not summarized above, which describe events in Baltimore, Maryland; but these also are entirely local in character. There are very general allegations that defendants were conspiring to bring about the same sort of monopoly in "numerous of the United States", but no facts are set forth to support them, and they must be disregarded. Even if these charges were substantial and supported by facts, there is no reason to suppose that the formation of a number of local units would have an effect on interstate commerce.

Since Count I is fatally defective in the ways just demonstrated, it is unnecessary to consider the various other objections to it which defendants urge.

▪ Count II repeats most of the allegations of Count I, and states a cause of action for tort, alleging an intentional and wrongful invasion of plaintiff's right to establish and conduct a lawful business, Shell Oil Co., Inc., v. State Tire & Oil Co., 6 Cir., 1942, 126 F.2d 971, 975; see also Original Ballet Russe v. Ballet Theater, 2 Cir., 1943, 133 F.2d 187, 189, and Pendleton v. Time, Inc., 1949, 339 Ill.App. 188, 189, 89 N.E.2d 435. "No persons, individually or by combination, have the right to directly or indirectly interfere or disturb another in his lawful business or occupation, or to threaten to do so, for the sake of compelling him to do some act which, in his judgment, his own interest does not require." Doremus v. Hennessy, 1898, 176 Ill. 608, 614, 52 N.E. 924, 925, 54 N.E. 524, 43 L.R.A. 797.

▪ Plaintiff alleges here that the wrongful acts which damaged his practice as a doctor were that the defendants conspired to and did have him expelled on a false charge from membership in the A.M.A., delayed unnecessarily in reinstating him and in announcing the reinstatement. It is further alleged that these steps were taken in violation of the Association's own rules and by-laws. That such a course of action is illegal is plain. The by-laws of a voluntary association are an agreement between it and its members, by which both are bound. Porter v. King County Medical Soc., 1936, 186 Wash. 410, 58 P.2d 367, 370; Pitcher v. Board of Trade, 1887, 121 Ill. 412, 420, 13 N.E. 187. Accordingly, a member may not complain of an expulsion when the association has acted according to its rules. State of North Dakota v. North Central Association of Colleges, 7 Cir., 1938, 99 F.2d 697, 700; Board of Trade, etc., v. Nelson, 1896, 162 Ill. 431, 44 N.E. 743. By the same token, an expulsion in violation of the rules of the society is illegal. Supreme Lodge of A. O. U. W. v. Zuhlke, 1889, 129 Ill. 298, 21 N.E. 789; Gardner v. East Rock Lodge No. 141, 1921, 96 Conn. 198, 113 A. 308; Lahiff v. St. Joseph's Total Abstinence & Benev. Society, 1904, 76 Conn. 648, 87 A. 692, 65 L.R.A. 92; People ex rel. Deverell v. Musical Mutual Protective Union, 1889, 118 N.Y. 101, 23 N.E. 129.

▪ Count II succeeds in stating a cause of action under these and similar cases. While it is true, as defendant points out, that the complaint is not "simple, concise, and direct", Fed.Rules Civ.Proc. rule 8, 28 U.S.C.A., the allegations read as a whole are sufficient, and plaintiff should have his day in court.

▪ Defendants have submitted a separate motion to strike parts of the complaint. It will be denied except as it relates to Paragraphs 7(t) and 8 of Count I as incorporated in Count II. These relate to the damages alleged to have resulted from plaintiff's father's changing his will. It is apparent from the face of the complaint that any such damage would be uncertain, remote and speculative consequences of the tort for which defendant is not legally responsible. Telluride Powder Co. v. Williams, 10 Cir., 1949, 172 F.2d 673.

Summary:

Count I of the amended complaint is dismissed.

Count II of the amended complaint will stand.

Paragraphs 7(t) and 8 of Count I as incorporated in Count II are stricken.