**Larry E. WRIGHT, Appellee,**

v.

**ARKANSAS ACTIVITIES ASSOCIA-
TION (AAA), Appellant.**

**No. 73–1655.**

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 17, 1974.

Decided July 16, 1974.

Eugene R. Warren, Little Rock, Ark., for appellant.

Robert M. Ford, Killough & Ford, Wynne, Ark., for appellee.

Before MEHAFFY, Chief Judge, and LAY and ROSS, Circuit Judges.

LAY, Circuit Judge.

Larry E. Wright, a teacher and coach at the Blytheville, Arkansas, Senior High School, brought this action against the Arkansas Activities Association (AAA), challenging a disciplinary ruling of the Executive Committee of the AAA.

The AAA is a voluntary association, the membership of which consists of public and parochial schools in Arkansas which maintain competitive athletic programs. The disciplinary ruling grew out of "off-season" football practices conducted at Blytheville in violation of AAA regulations. The challenged ruling placed Blytheville High School on probation for one year conditioned upon the school's not employing Wright as head football coach for the 1973–74 school year. Blytheville was notified that if it failed to accept the terms of the probation, it would not be allowed to participate in football games with other member schools. Wright was accordingly requested to resign from his $11,994.93 per year coaching and teaching position with the school.

The district court held that the AAA's "off-season" football practice regulation did not give Wright fair notice of the possible sanction for its violation, i. e., the impairment of his employment contract as a teacher and coach.[1] In view of Wright's property interest, the district court held the particular regulation upon which the penalty was based overly broad and unconstitutional. Jurisdiction was found to exist under 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983. We affirm the judgment of the district court.

At oral argument before this court, the AAA challenged the finding of jurisdiction under § 1983 in light of the

Supreme Court's recent decision in Kenosha v. Bruno, 412 U.S. 507, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). In reliance on the holding of Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that municipalities are not "persons" under § 1983 for purposes of damage suits, the Court in *Bruno* concluded that the generic word "person" was not "intended to have a bifurcated application to municipal corporations depending on the nature of the relief sought against them." *Bruno, supra* at 513, 93 S.Ct. at 2226. Thus, the Court held that municipal corporations are not "persons" for purposes of equitable relief under § 1983.

It is now urged by the Activities Association that it should enjoy the same immunity granted to municipal corporations and other political subdivisions, and therefore that it is not amenable to suit under § 1983. The district court recognized that the State of Arkansas and its regularly constituted agencies are not subject to suit. It concluded, however, that the AAA is not a "regularly constituted agency." The trial judge wrote:

> The Court finds that the Association was not created by the Constitution or by any statute of the State of Arkansas, and that it is not "the State" or an "agency of the State" as are agencies like the Arkansas State Highway Department, or the Arkansas Game & Fish Commission, or other administrative or regulatory agencies of a similar nature. Rather, the Association is a regulatory agency established and supported by local school systems in the State on a voluntary basis. Thus, it is not immune from suit, and any decree that may be entered against it will operate upon its Executive Committee and Executive Director.[2]

---

1. Although no tenure is afforded a teacher in the Arkansas school systems, at the time of the sanction in question Wright had already been awarded his 1973–74 contract with the Blytheville school district.

2. Although the AAA does not enjoy immunity, the district court found the requisite state action under § 1983, observing:

> While the Association is not a State agency that is immune from suit, it ap-

We find the district court's characterization of the AAA correct and therefore conclude that the Association does qualify as a "person" under § 1983 and jurisdiction is vested under § 1343(3) as alleged. However, assuming this conclusion wrong and that the AAA is a political subdivision of the state as it is urged, nevertheless, under the complaint filed, the defendant would still be subject to the equitable decree of the federal court since jurisdiction can be found under 28 U.S.C. § 1331(a).[3]

The AAA's original ruling specifically directed that Blytheville High School suspend Wright from his coaching position for one year. It later revised its order and gave the *school district* the choice of suspension or probation conditioned on Wright's dismissal. Regardless of the formal phraseology of its order, it is clear that the AAA's action was directed against Wright personally and sought his dismissal from the position of teacher-coach at Blytheville High School. The charges were directed against Wright; notice was given to him personally and he was accorded a hearing before the Committee. There can be little argument that the Executive Committee's main purpose was to take punitive action against Wright. Whether the AAA acted directly or indirectly against Wright, has little relevance under the circumstances. Its stranglehold over the school district caused the latter to terminate Wright's contract. If that termination was the result of coercion improperly applied by the AAA, the AAA is guilty of a wrongful interference with Wright's coaching contract and the latter has standing to sue for vindication of his injury.

This brings us to the fundamental question of whether the conduct of the AAA denied Wright due process of law. Wright was found to have violated the "off-season" practice rule, found in Article VII of the Association By-Laws. Article VII prescribes no penalty or sanction for a violation of its terms. The AAA relied, however, on § 22 of Article I to impose the penalty against Wright.[4] The difficulty posed is that Article I deals exclusively with the subject of player eligibility. Under the circumstances, the district court found that Wright could not know that the sanctions existing under § 22 of Article I could be invoked against him for a violation of Article VII.

One of the fundamental requirements of fairness implicit within due process is "warning . . . in language that the common world will understand, of what the law intends to do if a certain line is passed." McBoyle v. United States, 283 U.S. 25, 27, 51 S.Ct.

---

pears to be established, nevertheless, that the actions of athletic associations like the one before the Court in regulating public school athletic activities and imposing sanctions for rule violations are State actions and fall within section 1983 where they violate federally protected rights. We agree. *See generally* Brenden v. Independent School Dist. 742, 477 F.2d 1292 (8th Cir. 1973).

3. Although § 1331(a) was not specifically pleaded in the complaint, a review of the operative facts reveals that a federal constitutional question exists and that the amount in controversy exceeds $10,000. As we held in State Highway Commission v. Volpe, 479 F. 2d 1099 (8th Cir. 1973) :

[T]here is no need for this court to remand in order to amend the pleadings to specifically allege 1331(a) as a basis of jurisdiction. See Norton v. Larney, 266

U.S. 511, 516, 45 S.Ct. 145, 69 L.Ed. 413 (1925). We can assume that the complaint has been amended to conform to this fact and proceed to review the district court's judgment on the merits. See also National Farmers Union Property & Casualty Co. v. Fisher, 284 F.2d 421, 423 (8 Cir. 1960) ; Parker v. Gordon, 178 F. 2d 888, 890 n. 2 (1 Cir. 1949). *State Highway Commission, supra* at 1105–1106.

4. Section 22 provides :
Penalties. If the rules and regulations of this Association are violated, the Executive Director shall make careful investigation of the violation and shall take action in accordance with the Constitution and By-Laws of the Association. Where no penalty is specifically provided, he may fix a penalty subject to the approval of the Executive Committee.

340, 75 L.Ed. 816 (1931) (per Justice Holmes). Legal notice to those affected has always been a prerequisite to lawful punitive action. *Cf.* Mourning v. Family Publications Service, Inc., 411 U.S. 356, 375, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); Bouie v. City of Columbia, 378 U.S. 347, 353 n. 4, 84 S.Ct. 1697, 12 L. Ed.2d 894 (1964).[5]

In the present case Wright was given notice by the AAA rules that a member school was prohibited from engaging in football practice before a specific date each year. However, there was no warning that the AAA could decree punitive sanctions directly affecting his contract of employment if that rule was broken. We agree with the district court that the attempt by the Association's Executive Committee to punish Wright without fair notice that his employment contract could be coercively terminated if he violated the AAA's rules was fundamentally wrong.[6] Wright's employment was and must continue to be a matter of concern solely between him and his school. Even though it might be argued that Wright had fair notice that certain conduct was prohibited and that it might subject the *school* to punitive sanctions, there has been no showing that he had notice the AAA could directly or indirectly punish him personally. The regulation itself must provide specific notice; its scope cannot depend upon the subjective appraisals of those involved. Bouie v. City of Columbia, *supra* at 355–356 n. 5, 84 S.Ct. 1697.

To require the AAA to specify that it will seek suspension and punishment, not only of the school, but of those personally involved in rule violations, is not an undue burden. Without such specificity the possibilities of arbitrary action are enhanced and harm to individual interests would undoubtedly follow. To allow the AAA the power to invoke such penalties against whomever it chooses is contrary to our basic sense of justice.[7]

We affirm the judgment of the district court.

MEHAFFY, Chief Judge (dissenting).

In April 1973 the Blytheville, Arkansas School District offered plaintiff a one-year contract of reemployment as head football coach at Blytheville High School. Plaintiff accepted this offer. At approximately this same point in time the defendant Arkansas Activities Association was conducting an investigation into charges that the Blytheville School District, through the actions of plaintiff, had violated certain association rules. On June 22, 1973 the association executive committee conducted a hearing regarding the charges. Although four representatives of the

5. The district court in Kelley v. Metropolitan County Bd. of Education, 293 F.Supp. 485 (M.D.Tenn.1968), recognized the same principle on facts somewhat similar to those presented here. Students in a Nashville high school challenged the suspension of that school's athletic program for one year by the board of education. Several students had created disturbances at a basketball game in which their school had been a participant. In response to this misconduct, the board suspended that school from all athletic competition. The court found that the suspension violated due process since neither the standard of conduct expected nor the punishment to be imposed for a violation were specified.

6. Even in the absence of state action, it has long been held that a member in a voluntary association cannot be suspended or subjected to expulsion unless the by-laws specifically give him notice that certain conduct will subject him to punitive sanctions. *See, e. g.,* Allen v. Office Employees International Union, 53 Wash.2d 1, 329 P.2d 205 (1958); Jackson v. American Yorkshire Club, 340 F.Supp. 628 (N.D.Iowa 1971); Robinson v. Lull, 145 F.Supp. 134 (N.D.Ill.1956). When the association attempts without notice to inflict coercive sanctions on a non-member of the group, the arbitrariness of the punishment is plain.

7. Without warning to those against whom its sanctions will run, the AAA would have power to suspend not only those who participate in the wrongful conduct, but others who might be blameless as well, *i. e.,* students, teachers, principals and other school officials.

school district were present at this hearing, plaintiff apparently declined to attend. At the conclusion of the hearing the association executive committee placed the Blytheville High School on probation for one year and ordered that:

Coach Larry Wright [be] suspended from coaching at any member school for one year because in the opinion of the Executive Committee he knowingly violated AAA regulations pertaining to football practice.

Four days later the Blytheville School District requested the defendant association to conduct a second hearing to enable the plaintiff and the district to present certain additional evidence. On July 5th the association executive committee agreed to rehear the matter. Proceedings in the district court were stayed pending the association rehearing. The second AAA hearing was held on July 13, 1973. Plaintiff attended this hearing with retained counsel, as did representatives of the Blytheville School District. After considering extensive testimony from some twenty witnesses, the association executive committee unanimously concluded that its out-of-season rules for football had been violated by plaintiff's conduct and ordered that:

* * * the Blytheville School District be placed on one year probation and that Blytheville High School may not participate in football games with teams of other members of A.A.A. for a period of one year if such Blytheville High School team is coached by Coach Larry Wright.

In response to the association's investigation and ultimate order the school district reluctantly requested plaintiff's resignation and offered plaintiff instead a one-year contract as teacher at a substantially reduced salary. Plaintiff agreed to submit his resignation and accept the substitute contract, subject of course to the outcome of this litigation.

Against this factual background the district court concluded that all procedural requirements of the due process clause had been satisfied by the AAA, but that the conditional portion of the association executive committee's revised order violated plaintiff's substantive due process rights. The district court sustained the revised order insofar as it placed the Blytheville School District on probation, but the court ordered the AAA to rescind that portion of the order that offered the school district a partial reprieve on condition that it forego the football coaching services of plaintiff for one year.

If this case involved the validity of the defendant association's first order, I might well be able to concur in the result reached by the district court and the majority. The original executive committee order purported to terminate plaintiff's existing contract and to impair substantially plaintiff's ability, at least for one year, to pursue his chosen profession. I believe there is substantial doubt that the defendant association could, within the limits of due process, take such drastic, direct, and unilateral action against the property interests of a non-member of the association without some basis of authority in the association rules.

I am convinced, however, that the association's revised order, which is the only action in question before us, presents significantly different constitutional considerations. The revised order directly affected only the Blytheville School District, an association member. The nature of the order, to the degree it affected the association member, was clearly authorized by the discretionary sanctioning power expressly vested in the association executive committee by the AAA rules. The second hearing held by the AAA to reconsider its original order was full, fair, and could hardly be viewed as a sham to cure any prior procedural inadequacies. Finally, and most importantly, there was nothing in the revised AAA order that altered plaintiff's existing contract rights vis-a-vis his employer or directly impaired his ability to pursue his chosen profession.

I realize, of course, that the executive committee's revised order did place the school district on a painful election of either terminating plaintiff's existing contract or foregoing the AAA football competition of one of its schools for one year. In facing this option, however, the school district was confined by the contractual obligations it had already made to plaintiff. Thus, if plaintiff's violation of AAA rules did not constitute grounds for modification or termination of his contract by the school district, the school district would be in no position to unilaterally satisfy the conditional aspect of the executive committee's order. If, on the other hand, the school district had made compliance with AAA rules a condition of plaintiff's contract, then he would be in no position to claim inadequate or unfair notice.

The majority opinion suggests that the due process restrictions on the AAA reach beyond direct and unilateral deprivation of plaintiff's property rights to include any "wrongful interference with Wright's coaching contract." Interference by a third party with the contractual relations between others has, of course, been recognized for many years as a basis in tort law for granting damages and injunctive relief. *See, e. g.,* W. Prosser, Torts § 123 (3rd ed. 1964); Restatement of Torts § 766 (1939). Assuming for purposes of argument that the due process clause, by some analogy to tort law, does confer a federal constitutional right to be free from all state action that could interfere unduly with contractual relationships, I cannot agree that plaintiff is entitled to relief in this case.

There is no doubt that the AAA order in question indirectly, but nonetheless substantially, modified plaintiff's employment relationship. Claims for tortious interference with contractual relationships, however, have always been subject to the defense of justification or, in the language of the Restatement, "privilege." I am firmly convinced that the AAA's order was justified even though it may have amounted to a significant practical impairment of plaintiff's relationship with the Blytheville School District. It is undisputed that the association executive committee could properly have ordered a suspension of all Blytheville School District participation in AAA athletic competition as a sanction for its violation of association rules. Such a sanction, however, would have punished severely the students and other participants in AAA activities who were entirely innocent of the wrongdoing. The sanction ultimately selected by the association was one that was not only authorized by the AAA rules, but also was drawn as narrowly as possible to punish only those primarily responsible for the rule violation. Indeed, I cannot imagine a sanction more suitably fitted to the dual purpose of protecting the integrity of the admittedly valid association off-season practice rules while limiting the ·impact of the punishment to those primarily culpable in their conduct.

I respectfully dissent.