**Tammie McFARLIN and Pinkey McFarlin, as Next Friends of Christy Hardaway, a Minor, Plaintiffs,**

v.

**NEWPORT SPECIAL SCHOOL DISTRICT, a Public Body Corporate; Steve Castleberry, In His Official Capacity as Superintendent of Schools of the Newport Special School District, a Public Body Corporate; Dr. Michael Brown, Clay Curtner, William Hayes, Dr. Jabez Jackson, Jr., Timothy Watson, Ms. Loys Rutledge, Dennis Haidwood, In Their Official Capacities as Members of the Board of Directors of the Newport Special School District; and Ms. Tippi McCullough, Individually and In Her Official Capacity of Senior Girls Basketball Coach of the Newport High School, and Floyd B. Parnell, Individually and In His Official Capacity as Principal of the Newport High School, Defendants.**

No. B–C–92–005.

United States District Court,
E.D. Arkansas, N.D.

Feb. 14, 1992.

Austin Porter, Jr., Little Rock, Ark., for plaintiffs.

W. Paul Blume, Little Rock, Ark., for defendants.

## ORDER

STEPHEN M. REASONER, Chief Judge.

The plaintiffs in this case have requested an immediate hearing on their motions for a temporary restraining order and for preliminary injunctive relief. They seek immediate reinstatement for Christy Hardaway to the Newport High School basketball team.

The plaintiffs have alleged that Ms. Hardaway was dismissed from participation on the basketball team and the track team at Newport High School without being afforded an opportunity to be heard and without being informed of what specific rule she had allegedly violated. The plaintiffs have stated that Ms. Hardaway is an excellent athlete and carries a C+ grade point average.

The plaintiffs brought the lawsuit pursuant to 28 U.S.C. § 1343; 28 U.S.C. §§ 2201–2202 and 42 U.S.C. 1973j to redress the deprivation and abridgement of rights and privileges provided and secured by 42 U.S.C. §§ 1973a and 1973b. Relief is also sought pursuant to the Equal Protection[1] and Due Process Clause of the Fourteenth Amendment, and pursuant to 42 U.S.C. § 1983.

The plaintiffs have alleged that the manner in which Ms. Hardaway was dismissed from the basketball team violated her procedural due process rights.[2] The plaintiffs contend that Ms. Hardaway was a regular starter on the basketball team before her dismissal. Due to her family's economic status, it is alleged that it will be "difficult if not impossible" for her family to send her to college. It is further alleged that she has an "excellent" chance of obtaining an athletic scholarship. The plaintiffs contend that if Ms. Hardaway is not allowed to finish the current basketball season, it will severely hamper her prospects of obtaining an athletic scholarship. The plaintiffs request that this court enjoin Ms. Hardaway's dismissal from the basketball team; order that the defendants refrain from taking any action that will deprive her of "meaningful participation on the basketball and track teams"; and also order the defendants to refrain from taking any action that will harm or attempt to harm Ms. Hardaway's chances of obtaining a college scholarship.

Before granting an immediate hearing, the court ordered the plaintiffs on February 4, 1992, to submit a brief in support of their contention that procedural due process protection[3] should be afforded to high school students who are dismissed from participating in interscholastic athletics. The court directed the plaintiffs to cite specific authority from the Eighth Circuit Court of Appeals or from the United States Supreme Court in support of their assertion.

The plaintiffs have complied with the court's order by filing a brief on February 11, 1992. In their brief, the plaintiffs restated their theory of the case, that Ms.

---

1. The plaintiffs mentioned "equal protection" in their jurisdictional statement, however, no equal protection claim is set out in the complaint or argued in the motions. The court notes, however, that such a claim would not likely succeed in light of the holding in *In re U.S. ex rel. Missouri State High Sch. Etc.*, 682 F.2d 147, 151 (8th Cir.1982), that participation in interscholastic athletics, although an important part of the educational process, is not a fundamental right under the fourteenth amendment requiring the application of strict judicial scrutiny.

2. Additionally, the plaintiffs allege that the manner in which school board members in the Newport Special School District are elected violates various voting rights statutes. The motions for an immediate hearing, a temporary restraining order, and for a preliminary injunction do not touch on the voting rights issues. Therefore, the voting rights issues will be taken up at a later date.

3. U.S. Const. amend. XIV, § 1.

Hardaway's coach developed an animus toward her in response to complaints by Hardaway's parents. Her parents were allegedly protesting because the black members of the basketball team had been subjected to "racial epithets" by opposing fans during road games. Hardaway's parents were allegedly dissatisfied with the coach's failure to take appropriate action to force the opposing fans to discontinue their rude behavior.

The plaintiffs argue that this is a matter for the federal courts because Ms. Hardaway has a property interest in her continued participation on the basketball team, thereby entitling her to certain procedural due process safeguards. The plaintiffs allege that Hardaway was summarily dismissed without notice or explanation.

Upon the initial filing of this case the court considered immediate action, as it appeared that if the plaintiffs' claim merited relief, the need was immediate because the conclusion of the basketball season was drawing near. The court was stymied, however, due to its inability to identify a cognizable procedural due process right associated with participation in interscholastic athletics. The court found no reason to grant an immediate hearing where there was no arguable basis for relief.

In their response to the court's order, the plaintiffs once again argue that procedural due process must be afforded where the state attempts to deprive an individual of an education through suspension, expulsion, etc. The court does not disagree with this portion of the plaintiffs' argument. *See Goff v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1974).

In order to obtain the relief immediately requested herein, the plaintiffs must convince the court that the due process protection of the fourteenth amendment has been extended one step further to cases involving suspension or dismissal from participation in interscholastic athletics. To decide this question, the court looks to authorities it is bound to follow.

The plaintiffs were apparently unable to find any specifically relevant authority from the Supreme Court. The plaintiffs cite the following Eighth Circuit Court of Appeals cases, *In re U.S. ex rel. Missouri State High Sch., Etc.*, 682 F.2d 147 (8th Cir.1982); *Strickland v. Inlow*, 485 F.2d 186 (8th Cir.1973); and *Wright v. Arkansas Activities Association (AAA)*, 501 F.2d 25 (8th Cir.1974).

In its February 4, 1992, order, this court relied heavily on language contained in *In re U.S. ex rel. Missouri State High School*. In that case, the Eighth Circuit Court of Appeals considered whether a rule governing transfer students violated some of those students' constitutional rights where the application of the rule resulted in the ineligibility of certain students for participation in athletics. As part of its analysis, the court weighed the question of whether the students procedural due process rights had been violated. The court concluded that "[t]he specified procedures ... satisfy *any procedural due process requirements.*" *Id.* at 153 (emphasis added). The court assumed that whatever process that could arguably be required had been satisfied, but the court did not decide how much, if any, process was due. In a footnote, however, the court cited a case which held that *no* process was due since "a student's interest in participating in ... interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement[,] .... it falls outside the protection of due process." *Id.* at 153 n. 8 (quoting *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159–60 (5th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981)). The footnote reference to the *Walsh* case led this court to believe that although the court in *In re U.S. ex rel. Missouri State High School* did not need to reach the issue in deciding the case, the court was not convinced that any process was warranted.

In *Strickland v. Inlow*, 485 F.2d 186 (8th Cir.1973), the court considered whether two students were afforded adequate due process in connection with a suspension from attending school. The court is not aided in deciding the instant case by the holding in *Strickland*. *Strickland* deals with *suspension from school*, not merely

athletics, and is obviously distinguishable. As previously stated, there is no dispute as to whether certain procedural rights attach to the denial of *education.*

The court now turns to *Wright v. Arkansas Activities Association (AAA)*, 501 F.2d 25 (8th Cir.1974). *Wright* is of little help in the court's analysis because it deals with termination of employment. In *Wright*, the court found that the plaintiff had a property interest in his continued employment as a football coach. There can be no argument about that.

The plaintiffs argue that in light of the court's reliance on the footnote in *In re U.S. ex rel. Missouri State High School*, *supra* at 153 n. 8, the court should also be persuaded by a case from the Middle District Court of Tennessee, cited in a footnote in *Wright.* The case cited in the *Wright* footnote, *Kelley v. Metropolitan County Bd. of Education*, 293 F.Supp. 485 (M.D.Tenn.1968), involved the suspension of an all black school's entire interscholastic athletic program as a result of alleged misconduct. The court held that *"[w]henever a governmental body acts to injure an individual, the Constitution requires that the act be consonant with due process of law." Id.* at 491 (citations omitted and emphasis added).

The district court in *Kelley* rejected the argument that due process protection did not extend to participation in athletics because such participation is a privilege and not a right. *Id.* The court determined that "the right to engage in secondary school athletics, is of such significance and worth as to require that the proceedings which resulted in the [suspension] conform to the standards of due process." *Id.* at 492 (citing no authority).

The plaintiffs' contention that this court should be obligated to follow the holding in

the *Kelley* case because the Eighth Circuit Court of Appeals once cited the case in a footnote is not well taken. *Kelley* was cited in *Wright* in a footnote in support of the following general statement of well accepted law: "Legal notice to those affected has always been a prerequisite to lawful punitive action." The case was not, in any way, cited to support the proposition that students have a property interest in participation in interscholastic athletics. This court cannot conclude that by citing *Kelley*, the Eighth Circuit Court of Appeals intended to adopt the seemingly limitless extension of procedural due process protection described there.

■ That brings us back to the case this court relied on in its previous order, *In re U.S. ex rel. Missouri State High Sch., Etc.*, 682 F.2d 147 (8th Cir.1982). As the plaintiffs point out, the court in *In re U.S. ex rel. Missouri State High School* examined the constitutionality of certain rules and procedures. Assuming that some property interest was created by the mere existence of the procedures in that case[4], it cannot be concluded, as is urged by the plaintiffs, that a Newport Special School District Student Handbook provision[5] automatically creates similar rights or interests.

The court finds that the only authority on which it must rely supports the conclusion that a student's interest in participating in interscholastic athletics amounts to a mere expectation rather than a constitutionally protected claim of entitlement. Such an expectation must fall outside the protection of due process. *In re U.S. ex rel. Missouri State High Sch., Etc.*, 682 F.2d 147, 153 n. 8 (1982) (citing *Walsh v. Louisiana High Sch. Athletic Ass'n*, 616 F.2d 152, 159–60 (5th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981)).

---

4. Article VIII, section 8 of the Missouri State High School Activities Association constitution provided that "Students who transfer for reasons other than promotion are ineligible for 365 days." The court found that the rule satisfied due process requirements where the association's bylaws provided for notice and hearings and also the availability of certain hardship exceptions. Id. at 149, 153.

5. The handbook provides that "[s]tudents have the right to join an existing club and shall not be restricted for membership on the basis of race, sex, national origin or other arbitrary criteria." Handbook at § I, C, 2.

Even though several district courts [6] have found a property interest at stake in similar cases, this court must conclude that a clear majority of courts have found otherwise. *See Brands v. Sheldon Community Sch.,* 671 F.Supp. 627, 630 (N.D.Iowa 1987) (citing *Colorado Seminary v. NCAA,* 570 F.2d 320 (10th Cir.1978); *Hamilton v. Tennessee Secondary School Athletic Ass'n,* 552 F.2d 681 (6th Cir.1976); *Mitchell v. Louisiana High School Athletic Ass'n,* 430 F.2d 1155 (5th Cir.1970)).

■ The court is aware of the keen interest many hold in participation in sports. Sports can play an integral part in the development of character. Indeed, an injustice may have occurred when Ms. Hardaway was dismissed from the basketball team. However, it is not within the power granted to federal courts to right every wrong that may be inflicted on individuals in our society.[7] Should this court "create" the property interest the plaintiffs request, it could only result in a deluge of litigation over not only athletic participation, but also participation in activities that others may hold as dear as some do sports, such as band, theatre, or choir.

The problem is highlighted in this very case. The plaintiffs have not merely requested reinstatement for Ms. Hardaway to the basketball team. They also request this court insure *"meaningful* participation on the basketball and track teams" (emphasis added). Accommodation of that request would take this judge off the federal bench and place him on the team's bench next to the coach. Is the athlete getting enough playing time? Is the athlete playing the right position? The possibilities are endless.

If individuals are going to participate in sports, a club, or in a corporation, they must be willing to submit themselves to the authority of another individual in the role of a coach, club president, or chairman of the board. It is a virtual certainty that they will be subjected, on occasion, to arbitrary and unjust treatment. Anyone who has ever operated under someone else's supervision or authority has been frustrated at one time or another by some decision which directly affected them, but over which they had no control whatsoever. Often the decisions are simply wrong. For many of us, the first such experience came as part of our participation in high school athletics. However, the mere fact that a coach may be wrong does not convert the matter into a federal case.

The motions for an immediate hearing, for a temporary restraining order, and for a preliminary injunction, are hereby denied.

IT IS SO ORDERED.

---

**6.** *See, e.g., Boyd v. Bd. of Directors of McGehee School Dist.,* 612 F.Supp. 86, 93 (E.D.Ark.1985).

**7.** "[A judge] is not a knight-errant, roaming at will in pursuit of his own ideal of beauty or goodness." B.N. Cordozo, *The Nature of the Judicial Process* 136, 141 (1921).